[Civ. No. 67097. Second Dist., Div. Seven. July 19, 1983.]

UNDERWRITERS INSURANCE COMPANY,
Plaintiff and Respondent, v.
JOHN EDWARD PURDIE et al., Defendants and Respondents;
WALTER J. ATKINSON et al., Defendants and Appellants.

COUNSEL

Rosner & Owens, Andrew G. Owens, Lynn Skinner Foster and Tom A. Nunziato for Defendants and Appellants.

Daniels, Baratta & Fine, James M. Baretta, William Karl Mills and Michael B. Geibel for Plaintiff and Respondent.

No appearance for Defendants and Respondents.

OPINION

**THOMPSON, J.**—In this case we deal with a dispute concerning coverage provided by the liability provisions of a multiperil liability insurance policy for a shooting incident on the insured premises of a liquor store. The trial court, in a declaratory relief action initiated by the insurance carrier, determined the firearm exclusion indorsement to the insurance policy precluded coverage. Judgment was entered declaring the insurance carrier has no duty to defend or indemnify the insured or its employee against the claim of third parties, Walter Atkinson and his wife, Casandra Atkinson, for bodily injuries. Walter and Casandra Atkinson (hereafter appellants) appeal from the judgment.

The insurance policy was issued by Underwriters Insurance Company (hereafter Underwriters) to Samuel James Porter and John Edward Purdie, doing business as Jax Liquor (hereafter insured). The policy consists of 34 pages and has 2 principal parts. The first part entitled "Section 1—General Personal Property Form" identifies certain covered property and contains specific exclusions. The second part entitled "Section II—Special Multi-Peril Policy Liability Insurance" provides liability coverage. The policy was effective from April 14, 1979, to April 14, 1982.

Under section II, providing for liability coverage, is the following:

## "BODILY INJURY LIABILITY

## "PROPERTY DAMAGE LIABILITY

"1. The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies, caused by an occurrence, and arising out of the ownership, maintenance or use of the insured premises, and all operations necessary or incidental to the business of the named insured conducted at or from the insured premises, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent. . . ."

Under the part of the policy entitled "Definitions Applicable to Section II" occurrence is defined to mean "an accident . . . which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured."

The policy allegedly had attached and incorporated therein at the time of its issuance a general indorsement, which contains, inter alia, the following:

## "FIRE ARM EXCLUSION ENDORSEMENT

"4. The insurance provided herein for liability arising out of bodily injury or property damage does not apply to any bodily injury or property damage caused by, or occurring from any use maintenance or possession of a fire arm by insured or its agent or employee.

"5. Nothing herein contained shall be held to vary, waive, alter or extend any of the exclusions, conditions or other terms of the policy other than as above stated."

The issue of coverage was precipitated by the filing of a personal injury action on September 18, 1980 (hereafter the underlying action), by appellants against insured and Cutie Antoine, an employee of Jax Liquor. In their complaint they allege, inter alia, that the insured, prior to December 21, 1979, had negligently hired Antoine as a liquor clerk, knowing him to be hostile, violent, vicious in character, and unfit for employment in a position requiring constant contact with the public; that on December 21, 1979, while Walter Atkinson, an employee of P. C. Bottling Company, was making a delivery to Jax Liquor, he became involved in an argument with Antoine; and that Antoine, acting within the scope of his employment, shot and severely injured Atkinson with a gun which was kept on the premises of Jax Liquor, with the consent and permission of insured. The complaint contained causes of action for assault and battery, negligent supervision, negligent hiring, intentional infliction of emotional distress, and loss of consortium.

On October 23, 1980, Underwriters instituted this action for declaratory relief against insured, Antoine, and appellants, setting out in its complaint the undisputed facts of the underlying action, admitting that it was the insurance carrier on the policy in question, and attaching the complaint in the underlying action and the policy firearm exclusion indorsement. The complaint sought a declaration that Underwriters has no duty to defend or indemnify the insured or Antoine in the underlying action.

In the trial of the declaratory action, Leo Schultz, an insurance broker, doing business as Santa Monica Insurance Agency, testified that he had handled the insurance business for Porter for several years. He obtained the policy in question for insured. Prior to the issuance of the policy in question, he had many discussions with Porter about keeping a gun on his premises. In one discussion in 1972, Porter informed him that his worker's compensation insurance coverage had been cancelled because he kept a gun at the liquor store. In another discussion, he talked to Porter about the firearm exclusion in his policy from Underwriters, which provided coverage for the period from 1976 to 1979. At that time, he told Porter "in no way, shape or form would any coverage, liability specifically, be covered if there were a shooting; that there were a gun exclusion in the policy." Porter responded, "It is either me or them."

With respect to the policy in question, Schultz testified that he explained the limitation on liquor liability and the gun exclusion to Porter. He did not know who, in his office, mailed the original policy to insured, but it was mailed to insured.

The trial court took judicial notice of the underlying action and received in evidence a memo entitled "confirmation telephone conversation" dated

October 18, 1978, as a business record of Schultz, over the objections of appellants. This memo purported to inform Porter that there is a firearm exclusion in the policy.

Porter testified that he never had any discussion with Schultz or anyone from his office about a firearm exclusion. He first learned about the presence of a firearm exclusion in his policy from Underwriters after he reported appellants' claim. Moreover, he had reported two prior shooting incidents to Underwriters without any responsive mention of a firearm exclusion, although neither incident grew into a claim. He did not receive the policy in question, or the memo of October 18, 1978. His worker's compensation coverage was not cancelled because of a gun on his business premises.

The trial court found that insured was placed on notice of the firearm exclusion indorsement by the policy itself, and was further notified "of the existence of (the firearm exclusion) endorsement" by oral and written notification from the Santa Monica Insurance Agency. The court further found that Walter Atkinson did sustain bodily injury caused by the use of a firearm by Antoine while the latter was engaged in the business and employment of Jax Liquor. The court concluded that the firearm exclusion was conspicuous, plain and clear and not ambiguous. The court held for Underwriters, declaring there is no coverage. This appeal followed.

## CONTENTIONS

Appellants contend on appeal that: (1) the firearm exclusion is not conspicuous, plain and clear and is reasonably susceptible of an interpretation by which it does not exclude insured from its coverage; (2) the firearm exclusion does not preclude coverage because the liability of insured arose out of conduct unrelated to the use of a firearm; and (3) the trial court's erroneous admission of hearsay evidence constituted prejudicial error.

Underwriters contends on appeal that: (1) the firearm exclusion is valid; and (2) the trial court's determination that the insured had both constructive and actual notice of the firearm exclusion was proper.

## SUMMARY

It was improper for the trial court to charge the insured with knowledge of the firearm exclusion merely by the receipt of the policy without objection. Substantial evidence, however, supports the court's findings that insured did receive the policy and was notified of the existence of the firearm exclusion by oral communication from Santa Monica Insurance Agency. The firearm exclusion does not preclude coverage, however, because the

liability of insured arose from two independent negligent acts, one gun-related and the other nongun-related, which concurred to produce one injury. Accordingly, the judgment will be reversed.

## I

### The Proper Standard of Review

■ Since no extrinsic evidence was introduced below to aid the trial court in interpreting the terms of the insurance policy, this court must make an independent determination of the meaning of the policy's terms. (*Bareno* v. *Employers Life Ins. Co.* (1972) 7 Cal.3d 875, 881 [103 Cal.Rptr. 865, 500 P.2d 889]; *Parsons* v. *Bristol Development Co.* (1965) 62 Cal.2d 861, 865-866 [44 Cal.Rptr. 767, 402 P.2d 839].) Nevertheless, we are bound by the trial court's factual findings on the underlying circumstances insofar as they are supported by substantial evidence. All factual conflicts must be resolved in favor of the judgment, and all reasonable inferences must be drawn in support thereof. (*Coldwell Banker & Co.* v. *Pepper Tree Office Center Associates* (1980) 106 Cal.App.3d 272, 277 [165 Cal.Rptr. 51].)

■ Moreover, at this juncture, the underlying action has not been tried. "The resolution of the coverage dispute thus must be accomplished by accepting as true the allegations contained in the complaint" in the underlying action. (*State Farm Fire & Cas. Co.* v. *Kohl* (1982) 131 Cal.App.3d 1031, 1034 [182 Cal.Rptr. 720].)

## II

### The Trial Court's Determination the Policy Itself Gave Constructive Notice of Firearm Exclusion Is Improper.

■ Underwriters argues that the receipt of a policy and its acceptance by the insured, without objection, binds the insured as well as the insurer, and the insured is chargeable with its contents, including exclusions.

In support of its argument, Underwriters relies on the following language from *Aetna Casualty & Surety Co.* v. *Richmond* (1977) 76 Cal.App.3d 645 [143 Cal.Rptr. 75]; " 'It is a general rule that the receipt of a policy and its acceptance by the insured without an objection binds the insured as well as the insurer and he cannot thereafter complain that he did not read it or know its terms. It is a duty of the insured to read his policy.' (*Taff* v. *Atlas Assur. Co.* (1943) 58 Cal.App.2d 696, 703 . . . .) Here Richmond was charged with knowledge of the exclusions, and the evidence upon which he relied did not establish estoppel as to Aetna." (*Id.,* at p. 652.)

On the other hand, in *Logan* v. *John Hancock Mut. Life Ins. Co.* (1974) 41 Cal.App.3d 988 [116 Cal.Rptr. 528], the court made a review of three leading cases, namely, *Steven* v. *Fidelity & Casualty Co.* (1962) 58 Cal.2d 862 [27 Cal.Rptr. 172, 377 P.2d 284]; *Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263 [54 Cal.Rptr. 104, 419 P.2d 168], and *Young* v. *Metropolitan Life Ins. Co.* (1969) 272 Cal.App.2d 453 [77 Cal.Rptr. 382, 78 Cal.Rptr. 568]. In applying the principles of the *Steven, Gray,* and *Young* cases to an accidental death policy, the court said: "We glean from *Steven* and its progeny a general principle of public policy. . . : In the case of standardized insurance contracts, exceptions and limitations on coverage that the insured could *reasonably expect, must be called to his attention, clearly and plainly,* before the exclusions will be interpreted to relieve the insurer of liability or performance." (*Id.,* 41 Cal.App.3d at p. 995; italics in original.)

We can only observe that the *Richmond* court's reliance on a 1943 authority is questionable, and not in harmony with today's law governing exclusions in insurance contracts. (See, e.g., *Reserve Insurance Co.* v. *Pisciotta* (1982) 30 Cal.3d 800, 807-808 [180 Cal.Rptr. 628, 640 P.2d 764].)

We conclude, therefore, the mere receipt of the insurance policy in this case, which is shown by substantial evidence (*Coldwell Banker & Co.* v. *Pepper Tree Office Center Associates, supra,* 106 Cal.App.3d 272, 277) does not serve to charge the insured with constructive knowledge of the firearm exclusion.

### III

THE TRIAL COURT'S FINDING THAT INSURED HAD NOTICE OF THE EXISTENCE OF THE FIREARM EXCLUSION IS SUPPORTED BY SUBSTANTIAL EVIDENCE.

Appellants argue that the trial court's finding that the insured was notified of the existence of the firearm exclusion by oral and written communication from Santa Monica Insurance Agency is not supported by substantial evidence. We disagree.

The testimony of a single witness is adequate to support the trial court's findings. (*In re Marriage of Mix* (1975) 14 Cal.3d 604, 614 [122 Cal.Rptr. 79, 536 P.2d 479].) Here, the evidence establishes that Schultz testified he had several conversations with Porter about the firearm exclusion contained in the policy in question and the preceding policy with Underwriters. Therefore, we conclude that this contention is without merit.

## IV

### THE FIREARM EXCLUSION IS NOT AMBIGUOUS AND, THEREFORE, APPLICABLE.

■ Appellants argue that the firearm exclusion is not "plain and clear" and therefore is ambiguous in that the firearm exclusion applies only to the negligent use of a firearm by an employee, not an intentional or wilful use as alleged in the underlying action.

■ Exclusionary clauses or exceptions are to be interpreted by their plain meaning and will not be stretched to cover areas not intended by the clause. (*Aas* v. *Avemco Ins. Co.* (1976) 55 Cal.App.3d 312, 321 [127 Cal.Rptr. 192].) Any ambiguity is to be interpreted against the insurer and reasonable doubts as to uncertain language should be resolved against the insurer. (*Crane* v. *State Farm Fire & Cas. Co.* (1971) 5 Cal.3d 112, 115 [95 Cal.Rptr. 513, 485 P.2d 1129, 48 A.L.R.3d 1089].) The policy should be read as a layman would read it, interpreting the terms in an ordinary and popular sense as a person of average intelligence and experience would understand them. (*Aas* v. *Avemco Ins. Co., supra,* 55 Cal.App.3d at p. 321.) Any exclusionary clause must be conspicuous, clear and plain and construed strictly against the insurer and liberally in favor of the insured. (*Crane* v. *State Farm Fire & Cas. Co., supra,* 5 Cal.3d at pp. 115-116.) Where a strict, literal interpretation of a clause would unreasonably restrict coverage of the policy, such an interpretation cannot be foisted onto a layman nor can it be defended in terms of the risks which the layman sought to insure against. (*Schilk* v. *Benefit Trust Life Ins. Co.* (1969) 273 Cal.App.2d 302, 308 [78 Cal.Rptr. 60, 39 A.L.R.3d 1019].)

■ The exclusionary clause at issue provides that the "insurance provided herein for liability . . . does not apply to any bodily injury . . . caused by, or occurring from any use . . . of a firearm by insured or its agent or employee."

Directly under the firearm exclusion, the policy provides that "[n]othing herein contained shall be held to vary, waive, alter or extend any of the exclusions, conditions or other terms of the policy other than as above stated."

Under the liability coverage of the policy, Underwriters agrees that the "Company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury . . . to which this insurance applies, cause[d] by an occurrence. . . ." An occurrence is defined to mean "an *accident* . . . which results in bodily

injury . . . neither expected nor intended from the standpoint of the insured." (Italics added.)

It is apparent that appellant's argument lacks merit. Regardless of whether this shooting by Antoine was intentional or negligent, it must first come within the policy's definition of an *accident* for liability to arise. There could be no liability under the policy unless the occurrence is "neither expected nor intended from the standpoint of the insured." Moreover, here, "any use" of a firearm to cause bodily injury, even that which otherwise might give rise to liability, is specifically excluded from coverage under the policy.

We conclude therefore that the firearm exclusion is "plain and clear" and not ambiguous.

V

INSURANCE POLICY PROVIDES COVERAGE FOR THE ACCIDENT

■ We begin with the rule that construction of an insurance policy is a matter of law where the underlying facts are not in dispute. (*Bareno* v. *Employers Life Ins. Co., supra,* 7 Cal.3d 875, 881.) Although we have found no California case that deals directly with a firearm exclusion, our review of cases dealing with automobile exclusions in homeowners' policies persuades us that under the circumstances presented coverage is provided. As we view these cases, the dispositive issue is whether the events giving rise to the insured's liability are exclusively related to the use and operation of the excluded risk.

■ Appellants correctly contend the liability insurance policy provides coverage for their claimed injuries caused jointly by an insured risk (the insured's negligent hiring of a known violent person) and by an excluded risk (use of a firearm), so long as one of the causes is covered by the policy.

Appellants argue that under the California Supreme Court case of *State Farm Mut. Auto. Ins. Co.* v. *Partridge* (1973) 10 Cal.3d 94 [109 Cal.Rptr. 811, 514 P.2d 123], the Underwriters' policy provides coverage for their claim.

In *Partridge,* two separate insurance policies were at issue: a homeowner's policy which provided for general comprehensive liability coverage and an automobile liability policy. The homeowner's policy contained an exclusionary clause which denied coverage for injuries "arising out of the . . . use of . . . any motor vehicle." The insured wounded a passenger in his

vehicle when a gun he was holding accidentally discharged as the vehicle struck a bump. The insured's first act of negligence was filing the trigger on the gun to lighten its pull and give it a "hair trigger." His second act of negligence was driving his vehicle off the paved road onto bumpy, uneven ground. The combination of the two negligent acts resulted in the gun's accidental firing. Our Supreme Court held that the accident was covered by both the homeowner and automobile policies.

The court reasoned that when two, independent, negligent acts concur to produce one injury, each act should be viewed separately to determine policy coverage. The court then held that "although the accident occurred in a vehicle, the insured's negligent modification of the gun suffices, in itself, to render him fully liable for the resulting injuries . . . inasmuch as the liability of the insured arises from his non-auto-related conduct, and exists independently of any 'use' of his car, . . . the homeowner's policy covers that liability." (*Id.*, at p. 103.)

Appellants cite two additional cases, each of which relied on *Partridge,* to support their position.

*Glens Falls Ins. Co.* v. *Rich* (1975) 49 Cal.App.3d 390 [122 Cal.Rptr. 696], like *Partridge,* involved an accidental discharge of a gun in the insured's vehicle during a hunting trip. In finding coverage under the homeowner's policy, the court found that the insured's negligence was putting a loaded gun in a hazardous position, and that this negligence did not arise solely out of the use of the automobile. The court held, therefore, the liability arose from nonauto-related conduct and the exclusionary clause for auto-related injuries did not apply.

In *State Farm Fire & Cas. Co.* v. *Kohl, supra,* 131 Cal.App.3d 1031, the insured, while driving a truck, collided with a motorcycle, throwing the rider to the pavement. The insured then jumped from his truck and negligently dragged the motorcyclist from the street. The court held the exclusionary clause for auto-related injuries of the homeowner's policy did not apply because the insured's "act of dragging (the motorcyclist) from the road was independent of and unrelated to his use of the vehicle even though his use of the vehicle placed the victim in a position which led to the additional injury." (*Id.*, at p. 1039.)

We now turn to the contention of appellants that the negligent hiring was an independent cause of their injury.

Our research reveals there is a division of authorities on whether negligent hiring may serve as an independent basis for an employer's liability to a third person.

One line of cases is to the effect that an employer's failure to hire only competent and proper employees does not of itself constitute an independent ground of actionable negligence. (See, e.g., *Lange* v. *B & P Motor Express, Inc.* (N.D.Ind. 1966) 257 F.Supp. 319, 321-322; *General Electric Company* v. *Rees* (9th Cir. 1954) 217 F.2d 595; *Lewis* v. *Southern Pacific Co.* (1967) 102 Ariz. 108 [425 P.2d 840].) In other words, if liability to a third person for the act of an employee is to exist, it must be predicated upon the wrongful act or omission of the employee, and not upon the care or lack of it exercised by the employer in selecting the employee. (*Lange* v. *B & P Motor Express, Inc., supra,* 257 F.Supp. 319, 322.)

The other view, however, which California follows, is that an employer may be liable to a third person for the employer's negligence in hiring or retaining an employee who is incompetent or unfit. (*Rahmel* v. *Lehndorff* (1904) 142 Cal. 681 [76 P. 659]; *Monty* v. *Orlandi* (1959) 169 Cal.App.2d 620, 624-625 [337 P.2d 861]; *Bradley* v. *Stevens* (1951) 329 Mich. 556 [46 N.W.2d 382, 34 A.L.R.2d 367].) The rule is stated in Restatement Second of Agency section 213: "A person conducting an activity through servants . . . is subject to liability for harm resulting from his conduct if he is negligent or reckless: . . . (b) in the employment of improper persons . . . involving the risk of harm to others: . . ."

Comment d reads in part: "The principal may be negligent because he has reason to know that the servant . . . , because of his qualities, is likely to harm others in view of the work . . . entrusted to him. . . . [¶] An agent, although otherwise competent, may be incompetent because of his reckless or vicious disposition, and if a principal, without exercising due care in selection, employs a vicious person to do an act which necessarily brings him in contact with others while in the performance of a duty, he is subject to liability for harm caused by the vicious propensity. . . . [¶] *Liability results under the rule . . . , not because of the relation of the parties, but because the employer antecedently had reason to believe that an undue risk of harm would exist because of the employment. . . .*" (Italics added.)

A close review of the facts of *Partridge, Glens Falls* and *Kohl,* clearly reveals that the instant case is in total harmony with them. They are indistinguishable in principle. In each of them one of the negligent acts which occurred did not depend upon the use of the excluded risk, e.g., an automobile, and, therefore, did not fall within the exclusionary clause. In *Partridge,* it was the negligent alteration of the gun. The injury in *Glens Falls* resulted from the hazardous manner in which the gun was stored. Next, in *Kohl,* it was the negligent dragging. Here, it is the negligent hiring of an employee with a propensity for violence.

Underwriters contends, nonetheless, that coverage is foreclosed here because the present accident arose out of the use of a firearm. The answer is, of course, the use of the firearm in the instant case, like the use of the automobile in *Partridge,* was a mere contributing cause. "That multiple causes may have effectuated the loss does not negate any single cause; that multiple acts concurred in the infliction of injury does not nullify any single contributory act." (10 Cal.3d at p. 105.)

Underwriters relies on decisions which hold the automobile exclusion in the homeowner's policy precludes coverage because the insured's act giving rise to liability was dependent upon and related to insured's use of an automobile and thus, *Partridge* was not applicable. (See, e.g., *State Farm Fire & Cas. Co.* v. *Camara* (1976) 63 Cal.App.3d 48, 53-54 [133 Cal.Rptr. 600];[1] *National Indemnity Co.* v. *Farmers Home Mutual Ins. Co.* (1979) 95 Cal.App.3d 102, 108-109 [157 Cal.Rptr. 98];[2] *Allstate Insurance Co.* v. *Jones* (1983) 139 Cal.App.3d 271, 278 [188 Cal.Rptr. 557];[3] *Safeco Insurance Co.* v. *Gilstrap* (1983) 141 Cal.App.3d 524, 533 [190 Cal.Rptr. 425].[4]) However, we find that these cases are distinguishable from the instant case.

The facts in *Camara, National Indemnity, Jones,* and *Gilstrap,* were solely and indivisibly related to the use of the excluded instrumentality. In

---

[1] *State Farm Fire & Cas. Co.* v. *Camara, supra,* 63 Cal.App.3d 48, involved an individual, with a homeowner's policy containing an exclusion for auto-related risks, who converted a Volkswagen into a "dune buggy." A passenger injured in an accident in the dune buggy sued the insured for negligent design and construction. The Court of Appeal for the Third District held that "the injury in the instant case did not involve an instrumentality other than and separate from the vehicle itself. . . . Although the operation or use of the dune buggy was not the sole cause of the accident, any contributing *design* cause was dependent upon such operation or use, such that any liability for negligent design necessarily arose out of the operation or use of the motor vehicle." (*Id.,* at pp. 54-55; italics in original.)

[2] In *National Indemnity Co.* v. *Farmers Home Mutual Ins. Co., supra,* 95 Cal.App.3d 102, Division Two of this court held the exclusionary clause controlling where the driver of a vehicle was sued for wrongful death of a child who had been a passenger in the car. The child, after exiting the parked vehicle, ran into the street where he was struck by another vehicle. The claim that the negligent failure to supervise the child was nonvehicular to avoid application of the exclusion was rejected. The court reasoned that the negligent supervision occurred during the unloading of the vehicle and thus the conduct is not independent of and unrelated to the "use" of the vehicle. (*Id.,* at pp. 108-109.)

[3] In *Allstate Insurance Co.* v. *Jones, supra,* 139 Cal.App.3d 271, the insured, a construction contractor, owned a pickup truck equipped with a rack for steel reinforcing rods. In a collision with another vehicle the negligently loaded rods were ejected from the rack, striking and killing the other driver. The court concluded the "improperly loaded rebar depended on the truck's movement and velocity to become a hazard" and was thus auto-related, making the exclusion preclude coverage. (*Id.,* at p. 277.)

[4] In *Safeco Insurance Co.* v. *Gilstrap, supra,* 141 Cal.App.3d 524, the court held that the insured's conduct in negligently entrusting a motorcycle could not be disassociated from the use of the vehicle itself and thus was auto-related, which expressly excluded coverage.

*Camara,* the automobile was negligently redesigned and rebuilt into a dune buggy. The negligent supervision of the child during her exit from (unloading) the automobile was involved in *National Indemnity. Gilstrap* involved the negligent entrustment of a motorcycle. Finally, in *Jones,* the negligence involved the improperly loaded rebar on the truck.

Here, in contrast, the negligent hiring or retention of Antoine is not indivisibly related to the use of a firearm. We conclude, therefore, that appellants correctly contend that the liability insurance policy provides coverage for their alleged injuries. It is unnecessary to reach the other contentions.

Accordingly, the judgment is reversed and the matter remanded to the trial court with direction to enter judgment in accordance with the principles which we have stated.

Schauer, P. J., and Johnson, J., concurred.

The petition of plaintiff and respondent for a hearing by the Supreme Court was denied September 21, 1983.