942 F.2d 790
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Tony Flores BAUMEA, Plaintiff-Appellant,
v.
TOWN OF GUADALUPE, Defendant,
and
National Union Fire Insurance Company of Pittsburg, of
Pittsburg, PA., Granite State Insurance Company,
Defendants-Appellees.
Apolonia ZALAZAR, Judgment Creditor, Plaintiff-Appellant,
v.
TOWN OF GUADALUPE, Defendant,
and
National Union Fire Insurance Company of Pittsburg,
Defendant-Appellee.
Tony Flores BAUMEA, Apolonia Zalazar, Judgment Creditor,
Plaintiffs-Appellants,
v.
TOWN OF GUADALUPE, Defendant,
and
Aid Insurance Co., Defendant-Appellee.
Anita PROVENCIO, Plaintiff-Appellant,
v.
TOWN OF GUADALUPE, et al., Defendants,
and
Allied Mutual Insurance Co., aka AID Insurance Co.,
garnishee, Defendant-Appellee.
 Nos. 89-16639, 89-16649, 90-15246, 90-15258 and 90-15572.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 4, 1991.
Decided Sept. 3, 1991.
 
 Before HUG, ALARCON and WIGGINS, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Antonio Baumea, Apolonia Zalazar, and Anita Provencio appeal the district court's grant of summary judgment in favor of AID Insurance company ("AID") in the first of these consolidated garnishment actions. The appellants claim that a liability insurance policy issued to the Town of Guadalupe ("Guadalupe") by AID covers the damages they suffered as a result of their unlawful arrest. Baumea and Zalazar appeal the district court's grant of summary judgment in favor of National Union Fire Insurance Company ("National Union") in the second of these consolidated garnishment actions. The appellants contend that a liability insurance policy issued by National Union to Guadalupe covers the damages they suffered as a result of their unlawful arrest. In both garnishment actions, the district court determined that the insurance policies issued to Guadalupe by AID and National Union excluded coverage for the appellants' damages. The court therefore granted AID and National Union's motions for summary judgment. We affirm in part and reverse in part.[1]
 
 I.
 
 3
 Provencio seeks coverage under the AID policy which was in effect at the time of her arrest on June 4, 1984. Under the general liability coverage sections of the policy, the AID policy would clearly cover the damages incurred by Provencio. However, AID claims that a "supplemental endorsement" was incorporated in the renewed policy. The endorsement, printed on a separate piece of paper, reads:
 
 
 4
 In consideration of the premium reduction, it is hereby understood and agreed that the following exclusion is added to form GL0404, comprehensive general liability endorsement section II, personal injury, (8) does not apply to any loss arising out of the activities of the law enforcement agency.
 
 
 5
 AID has never produced a signed copy of the endorsement, nor has it put forth evidence of a reduced premium for the renewed policy. Instead, AID introduced an affidavit from Fred Carroll, the insurance agent who wrote both the original and renewed policies for Guadalupe in support of its motion for summary judgment.[2]
 
 
 6
 Carroll's affidavit is insufficient to support a summary judgment for AID. The affidavit indicates only that the failure to have a signed copy of the endorsement would have been inconsistent with company policy. It says nothing about whether this particular endorsement was signed. More importantly, there is no evidence that AID granted a premium reduction in exchange for the exclusion. Under Arizona law, even if the policy was signed, it could not be effective if no consideration was given. Thus, there remains a material issue of fact whether the exclusion is enforceable. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).
 
 II.
 
 7
 AID contends that its policy with Guadalupe does not cover appellants Baumea and Zalazar because they were arrested after the expiration of the policy. The original AID policy was in effect from July 1, 1982 to July 1, 1983, and the renewed AID policy expired on July 1, 1984. Zalazar was arrested on July 5, 1985 and Baumea on July 10, 1985. Both policies specifically limited coverage to injuries that arise from acts "committed during the policy period." Because the false arrests of Baumea and Zalazar did not occur during the AID policy period, Baumea and Zalazar cannot recover under the policy for the direct actions of Guerra and Heun.
 
 
 8
 Baumea and Zalazar contend that, regardless of resolution of the above issues, they are entitled to recover from AID under the concurrent cause doctrine. Their contention is based on the findings of fact and conclusions of law issued by the district court in the underlying suits by the appellants against Guadalupe.[3]
 
 
 9
 We agree with AID that the concurrent cause doctrine is not applicable here. Before causation becomes an issue, there must be a "covered loss." Zalazar and Baumea were arrested after the policy's expiration and their injury is not covered by the policy.
 
 III.
 
 10
 Baumea and Zalazar also seek coverage under the "Broad Form Comprehensive General Liability" policy issued by National Union to Guadalupe. The policy contains a liability provision and definition of personal injury which is identical to that of the AID policy. The National Union policy in effect from July 1, 1984 to July 1, 1985 (the "original policy"), has the following exclusion:
 
 
 11
 This policy will not provide coverage for liability arising out of losses insured under law enforcement officers liability policy: [blank space for policy number].
 
 
 12
 However, the policy was renewed and in effect from July 1, 1985 to July 1, 1986 (the "renewed policy"), replaced the above exclusion with the following:
 
 
 13
 This policy will not provide an [sic] coverage for any occurrence arising out of the activities of any law enforcement personnel and/or agency.
 
 
 14
 The parties dispute which version of the policy controls and whether that policy's exclusionary language eliminates coverage. The original policy expired on July 1, 1985 and the renewed policy became effective the same day. However, the renewed policy was not received and countersigned by Guadalupe until July 15, 1985. Both Zalazar and Baumea's arrests occurred between the expiration of the original policy and the receipt by Guadalupe of the renewed policy.
 
 
 15
 Under Arizona law, Guadalupe was entitled to assume, without contrary notice, that it would receive the same coverage under the renewed policy as it had under the original policy. It is undisputed that the first notice Guadalupe would have had of the amended exclusion in the renewed policy was the presentation of the policy on July 15, 1985. Guadalupe simply had no opportunity to discuss or negotiate the amendment. We therefore conclude that the first policy was in effect. See Lumbermen's Ins. Co. v. Heiner, 74 Ariz. 152, ----, 245 P.2d 415, ---- (1952); see also Couch on Insurance 2d, § 68.61 (1983).
 
 
 16
 National Union's argument concerning the "typical delay in the insurance industry" is unavailing. While it may be true that a delay is common in furnishing an insured with a copy of a renewed policy, the insurer may not unilaterally alter the terms of insurance during that time. Because no notice was given to Guadalupe of any altered terms, National Union had the duty to provide the same coverage in the renewal policy as it had in the original policy. See Lumbermen's, 74 Ariz. at 156; 245 P.2d at 418.
 
 
 17
 National Union contends that, even under the original policy, there is no coverage for Baumea's and Zalazar's losses. The original policy excludes "losses insured under law enforcement officers liability insurance policy: [blank space for policy number]." Guadalupe had contracted with Lloyds of London to provide law enforcement insurance. The Lloyds policy had a coverage limit of $300,000.
 
 
 18
 When interpreting an insurance policy, the "cardinal principle ... is that the intention of the parties should control." Home Indemnity Co. v. Wilson, 107 Ariz. 434, 436, 489 P.2d 244, 246 (1971) (citation and internal quotations omitted). However, "where there is any ambiguity, or more than one possible construction of the provisions [of the policy], it is to be construed most strongly against the insurer and in favor of the insured." Wilson, 107 Ariz. at 436-37, 489 P.2d at 246-47 (citation and internal quotations omitted). Here, it is unclear whether the Lloyds policy in this case was intended to be inserted into the National Union's policy. This ambiguity in the exclusion's language should therefore be resolved in favor of the appellants. See id. Moreover, even if the exclusion prevents coverage for the actions of the police officers, National Union has not demonstrated that the exclusion is applicable to the negligence action against the Town of Guadalupe. There is, therefore, a genuine issue of material fact regarding whether the policy was intended to cover the appellants' losses.
 
 
 19
 AFFIRMED IN PART, REVERSED IN PART, and REMANDED.
 
 
 20
 WIGGINS, Circuit Judge, concurring.
 
 
 21
 I concur in the majority's disposition. I write separately, however, to express my view that this court should have resolved the concurrent causation issue with regards to 1) Provencio on the AID insurance policy, and 2) Baumea and Zalazar on the National Union insurance policy.
 
 
 22
 In the district court, Baumea, Zalazar, and Provencio argued that they were entitled to judgment against the insurance companies under the concurrent cause doctrine. This doctrine allows insurance coverage where two causes are each proximate causes of an injury, despite the fact that one of them is specifically excluded from policy coverage. See generally State Farm Mut. Auto Ins. Co. v. Partridge, 10 Cal.3d 94 (1973). Baumea, Zalazar, and Provencio, relying on the district court's unambiguous findings of proximate causation in the underlying suits, argued that Guadalupe's negligence in the hiring and supervision of its police officers caused their injury and that coverage should be afforded. See, e.g., Underwriters Ins. Co. v. Purdie, 145 Cal.App.3d 57 (1983) (allowing concurrent cause coverage under facts remarkably similar to the instant case). The district court held that the doctrine was inapplicable to this case. Baumea, Zalazar, and Provencio argue on appeal that the district court erred.
 
 
 23
 Given the district court's unambiguous causation findings, the concurrent cause position advanced by Baumea, Zalazar, and Provencio is potentially dispositive of this case. If we had determined that Arizona recognized the concurrent cause doctrine and that it applied in this case, there would be no need for the parties to proceed to trial on the contract issues discussed by the majority opinion. The case would be decided. Under these circumstances, I simply do not understand why we do not address the issue.
 
 
 24
 If, on the other hand, we determined that the concurrent cause doctrine was inapplicable to this case, the parties would proceed to trial on the contract issues discussed by the majority. The difference, of course, is that the parties would not be left without a resolution of the concurrent cause issue. While I do not hazard to anticipate the probable outcome on remand, I recognize the very realistic chance that the concurrent cause question may find its way back to our court. This of course would be months, if not years, down the road and would require the parties to expend needless effort and expense.
 
 
 25
 I understand that Arizona courts, while recognizing generally the concurrent cause doctrine, have never explained its application in Arizona. See, e.g., Quinonez on Behalf of Quinonez v. Arizona, 144 Ariz. 193 (Ariz.App.1984). In my opinion, however, this is no reason for not addressing a dispositive issue which the parties have placed before us. This court is often faced with difficult issues of state law in which we must anticipate the path likely to be followed by the state. Given the dispositive nature of the concurrent cause issue, this is what we should have done in this case.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 In Arizona, a writ of garnishment may be issued "in the circumstances and in the manner provided by the laws of the State of Arizona." Rules of Practice of the United States District Court. In the instant case, the right to garnishment is determined by Ariz.Rev.Stat. § 12-1570, et seq. and therefore, the issues in this appeal are to be decided in accordance with Arizona law. A grant of summary judgment is reviewed de novo. Kruso v. Int'l Tel. & Tel. Corp., 872 F.2d 1416, 1421 (9th Cir.1989), cert. denied, 110 S.Ct. 3217 (1990). This court must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the law. Tzung v. State Farm Fire and Cas. Co., 873 F.2d 1338, 1339-40 (9th Cir.1989)
 
 
 [2]
 Carroll states in pertinent part:
 I do not recall who signed the exclusion, nor do I remember it being signed. However, I feel quite sure that a separate copy of the exclusion was signed and returned to AID; otherwise, they would have cancelled the policy. AID was quite adamant about having the endorsement in their office.
 
 
 [3]
 In those proceedings, the district court concluded that Guadalupe was negligent in the hiring, training, supervising and retaining of officers Guerra and Heun. Further, the court found that Guadalupe's negligence was a proximate cause of the damages suffered by the appellants