[No. B065620. Second Dist., Div. Seven. Nov. 16, 1994.]

DRG/BEVERLY HILLS, LTD., et al., Plaintiffs and Appellants, v. CHOPSTIX DIM SUM CAFE AND TAKEOUT III, LTD., et al., Defendants and Respondents.

## COUNSEL

Hillel Chodos, Michael A. Chodos, Breidenbach, Swainston, Crispo & Way, Thomas, A. Kearney, Richard E. Rico and Paul Alvarez for Plaintiffs and Appellants.

Silver & Freedman, Neil H. Freedman, Mitchell B. Stein, Lauren B. Tran, Sulmeyer, Kupetz, Baumann & Rothman, Wesley H. Avery and David G. Geffen for Defendants and Respondents.

## OPINION

**STOEVER, J.**\*—Plaintiff appeals from a judgment entered in favor of defendant after jury verdict.

On or about March 17, 1989, appellant DRG/Beverly Hills, Ltd. (hereinafter DRG), as lessor, and respondent Chopstix Dim Sum Cafe & Takeout III, Ltd., through its general partner, Chopstix III, Inc. (hereinafter collectively Chopstix), as lessee, entered into a written lease agreement for premises to be occupied by lessee's restaurant/bar business.

Respondents Epsteen, Milham and Benun (hereinafter Guarantors) each individually guaranteed Chopstix's performance under the aforementioned lease agreement.

Said lease agreement contained certain contingencies:

---

\*Judge of the Los Angeles Superior Court sitting under assignment by the Chairperson of the Judicial Council.

1.  Chopstix would obtain a beer and wine license and all other pertinent governmental permits/approvals not later than 90 days following the date of execution (June 23, 1989); or, if Chopstix was unable to obtain said license, permits and approvals within the specified time, DRG would have the option to obtain same within 180 days of execution (Sept. 23, 1989). DRG was not to tender possession of the premises to Chopstix until such licenses, permits and approvals had been obtained.

2.  DRG was obligated to tender possession of the premises to Chopstix only when improvements to the premises were substantially complete and, under any circumstances, not later than March 31, 1991.

3.  Chopstix's obligation to pay rent was specifically conditioned upon a valid tender of possession by DRG.

The required licenses, permits and approvals were not obtained by either party on or before the September 23, 1989, termination date. The wine and beer license was never obtained.

The lease agreement contained a provision specifically requiring all amendments or modifications to be in writing.

DRG contends that Chopstix verbally and by its conduct waived the aforementioned contingencies. With respect to the verbal waiver, DRG relies primarily upon the hearsay testimony of a DRG representative relating a June 27, 1989, meeting with Stephen M. Sukman, a Chopstix representative, wherein the latter allegedly stated that the beer and wine license contingency was waived. Mr. Sukman was called as a witness and specifically denied making such a waiver and denied having authority to do so.

Subsequent to the June 27, 1989, meeting, Chopstix specifically refused to acknowledge the alleged waiver by Sukman. On two later occasions, Chopstix expressly refused in writing to waive the contingencies and gave DRG written notice that the contingencies would not be waived.

After the September 23, 1989, termination date and until July 1990, notwithstanding the foregoing exchanges regarding the contingencies, both DRG and Chopstix proceeded with the restaurant/bar project as though the lease agreement was in full force and effect. During this period, a lease amendment was negotiated and executed, additional construction work was performed, expenses were incurred, and correspondence and other documents passed between DRG and Chopstix, all of which indicated that the project was ongoing.

In mid-July 1990, DRG advised Chopstix that the premises were nearly ready for Chopstix's possession. Chopstix advised DRG that Chopstix would accept the premises only with a rent reduction and increase in tenant improvement allowance.

DRG filed this lawsuit alleging breach of contract and breach of the continuing guarantees. Issues of liability and damages were bifurcated. DRG contends that Chopstix waived the contingencies thereby obviating the September 23, 1989, termination. In the alternative, DRG contends that Chopstix is estopped by its conduct and verbal representations from denying the enforceability of the lease agreement.

Chopstix denies any waiver of the contingencies and contends that the lease agreement by its terms terminated on September 23, 1989. Chopstix further contends that DRG had not substantially completed its construction obligations at the time of the June 1, 1989, tender of possession, and that DRG failed to retender the premises when substantial completion actually occurred.

Over DRG's objection, the trial court instructed the jury that DRG had the burden of proving Chopstix's waiver of the contingencies by clear and convincing evidence (vis-à-vis a preponderance of evidence).

The jury returned special verdicts finding:

1.   That, prior to September 23, 1989, Chopstix did not waive termination of the lease agreement due to failure to timely satisfy the contingencies;

2.   That there was a valid contract entitled "first amendment to lease" at the time of breach; and,

3.   That DRG had not substantially completed its construction obligations on or prior to any date of tender of possession; that DRG was not excused from performance; and, that Chopstix had not waived any such failure of performance.

The trial court refused to consider DRG's estoppel claim, finding such to be unnecessary in light of the jury's verdicts.

Judgment was entered in favor of respondents. Attorney fees were awarded to respondents in the amount of $474,938.45, pursuant to the

attorney fee provision of the lease agreement. Posttrial motions were determined in respondents' favor. This appeal followed.

## ISSUES

Two issues are presented:

1. What is the standard of proof for a waiver of rights under a commercial contract: (a) clear and convincing evidence or (b) preponderance of the evidence?

2. Did the trial court err in refusing to rule upon appellant's equitable estoppel claim?

## WAIVER AND ESTOPPEL DISTINGUISHED

The terms "waiver" and "estoppel" are sometimes used indiscriminately. They are two distinct and different doctrines that rest upon different legal principles.

Waiver refers to the act, or the consequences of the act, of one side. Waiver is the intentional relinquishment of a known right after full knowledge of the facts and depends upon the intention of one party only. Waiver does not require any act or conduct by the other party.

"[E]stoppel is applicable where the conduct of one side has induced the other to take such a position that it would be injured if the first should be permitted to repudiate its acts. (*Wilcox* v. *Ford* (1988) 206 Cal.App.3d 1170, 1179-1180 [254 Cal.Rptr. 138]; [*BP Alaska Exploration, Inc.* v. *Superior Court* (1988) 199 Cal.App.3d 1240 (245 Cal.Rptr. 682)]; *Insurance Co. of the West* v. *Haralambos Beverage Co.* (1987) 195 Cal.App.3d 1308, 1320 at fn. 6 [241 Cal.Rptr. 427].)" (*Brookview Condominium Owners' Assn.* v. *Heltzer Enterprises-Brookview* (1990) 218 Cal.App.3d 502, 512 [267 Cal.Rptr. 76]; 11 Witkin, Summary of Cal. Law (9th ed. 1990) Equity, § 178, pp. 860-861.)

"Four elements must ordinarily be proved to establish an equitable estoppel: (1) The party to be estopped must know the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had the right to believe that it was so intended; (3) the party asserting the estoppel must be ignorant of the true state of facts; and, (4) he must rely upon the conduct to his injury." (*Insurance Co. of the West* v. *Haralambos Beverage Co.* (1987) 195 Cal.App.3d 1308, 1321 [241 Cal.Rptr. 427].)

The doctrine of estoppel has been codified in Evidence Code section 623: "Whenever a party has, by his own statement or conduct, intentionally and deliberately led another to believe a particular thing true and to act upon such belief, he is not, in any litigation arising out of such statement or conduct, permitted to contradict it."

## STANDARD OF PROOF RE WAIVER

■ All case law on the subject of waiver is unequivocal: " 'Waiver always rests upon intent. Waiver is the intentional relinquishment of a known right after knowledge of the facts. [Citations]. The burden, moreover, is on the party claiming a waiver of a right to prove it by clear and convincing evidence that does not leave the matter to speculation, and 'doubtful cases will be decided against a waiver.' " (*City of Ukiah* v. *Fones* (1966) 64 Cal.2d 104,107-108 [48 Cal.Rptr. 865, 410 P.2d 369]; *Grubb & Ellis Co.* v. *Bello* (1993) 19 Cal.App.4th 231, 236 [23 Cal.Rptr.2d 281].)

In accord: *Estate of Coffin* (1937) 22 Cal.App.2d 469 [71 P.2d 295]; *E.D. McGillicuddy Constr. Co.* v. *Knoll Recreation Assn., Inc.* (1973) 31 Cal.App.3d 891 [107 Cal.Rptr. 899]; *In re Marriage of Moore* (1980) 113 Cal.App.2d 19 [247 P.2d 609]; *Harper* v. *Kaiser Cement Corp.* (1983) 144 Cal.App.3d 616 [192 Cal.Rptr. 720]; *In re Marriage of Vomacka* (1984) 36 Cal.3d 459 [204 Cal.Rptr. 568, 683 P.2d 248]; *Pacific Valley Bank* v. *Schwenke* (1987) 189 Cal.App.3d 134 [234 Cal.Rptr. 298]; *Cathay Bank* v. *Lee* (1993) 14 Cal.App.4th 1533 [18 Cal.Rptr.2d 420].

The pivotal issue in a claim of waiver is the intention of the party who allegedly relinquished the known legal right.

The California Supreme Court has held that the preponderance of evidence standard applies for proof of an oral joint venture or partnership agreement and in civil fraud cases. The court specifically discussed and rejected the clear and convincing proof standard in oral joint venture or partnership and civil fraud cases. (*Weiner* v. *Fleischman* (1991) 54 Cal.3d 476 [286 Cal.Rptr. 40, 816 P.2d 892]; *Liodas* v. *Sahadi* (1977) 19 Cal.3d 278 [137 Cal.Rptr. 635, 562 P.2d 316].)

The Supreme Court has not held that the clear and convincing evidence standard is rejected in favor of the preponderance of evidence standard in all civil cases. The *Weiner* and *Liodas* opinions, *supra*, are limited in their scope. "In holding that an oral joint venture or partnership agreement may be established by a preponderance of the evidence, it is important to note what this opinion does not hold. Contrary to the suggestion of [appellant], our

decision is not compelled by our holding in *Liodas* v. *Sahadi, supra,* 19 Cal.3d 278. *Liodas,* in holding that the proper standard of proof in civil fraud actions is preponderance of the evidence, did not disapprove of the clear and convincing standard of proof in all civil cases. In fact, *Liodas* noted that under Evidence Code section 115, the clear and convincing evidence standard is 'an alternative' standard of proof that 'is required on certain issues' by statute or by case law (19 Cal.3d at p. 291). . . ." (*Weiner* v. *Fleischman, supra,* 54 Cal.3d at p. 489, fn. 4.)

*Barrett* v. *Bank of America* (1986) 183 Cal.App.3d 1362 [229 Cal.Rptr. 16], is distinguishable. The Court of Appeal, Fourth District, held that the burden of proof for oral modification of a written contract is a preponderance of the evidence. The court, relying on *Liodas* v. *Sahadi* 19 Cal.3d 278 [137 Cal.Rptr. 635, 562 P.2d 316], rejected the clear and convincing proof standard. (Disapproving in part its decision in *Coldwell Banker & Co.* v. *Pepper Tree Office Center Associates* (1980) 106 Cal.App.3d 272 [165 Cal.Rptr. 51].) The court in *Barrett, supra,* was dealing with an alleged mutually agreed upon oral modification to a written contract supported by consideration.

Appellants' argument that the clear and convincing proof standard should apply only to those instances of statutorily created rights favored in the law is without merit. Several of the cited cases do state that the clear and convincing proof standard "particularly" applies to rights favored in the law. None of the cases, however, hold that the clear and convincing standard applies exclusively to such favored rights.

The trial court correctly instructed the jury that the waiver of a known right must be shown by clear and convincing proof.

## ESTOPPEL

█ Appellants' estoppel claim was brought to the trial court's attention in trial briefs. The trial court refused to consider the estoppel issues stating that such was unnecessary in light of the jury verdicts. As discussed above, waiver and estoppel are separate and distinct doctrines. Appellant was entitled to have its claim of estoppel determined on the merits. The special jury verdicts and findings contained therein do not resolve the estoppel issue nor do they obviate the trial court's responsibility to rule on the merits.

The estoppel issue is a nonjury fact question to be determined by the trial court in accordance with applicable law. There is authority indicating that it might have been better procedure to rule upon the estoppel issue before

submitting the matter for jury determination. However, the order of such a determination is within the sound discretion of the trial court. The trial court did not abuse its discretion in submitting the matter for jury determination before ruling on the estoppel issue. It was, however, the duty of the trial court to rule on the estoppel issue. It was error to refuse to do so.

### DISPOSITION

The judgment is reversed and the matter is remanded for trial only as to the claim of estoppel. The trial court is to determine the liability, if any, of respondent guarantors within the context of its determination of the estoppel issues. The award of attorney fees and costs is reversed and remanded for trial court consideration after determination of the estoppel issues. Appellants to recover costs on appeal.

Lillie, P. J., and Johnson, J., concurred.

Appellants' petition for review by the Supreme Court was denied February 2, 1995.