[No. B082540. Second Dist., Div. Three. Jan. 31, 1996.]

CENTURY TRANSIT SYSTEMS, INC., et al., Cross-complainants and Appellants, v.
AMERICAN EMPIRE SURPLUS LINES INSURANCE COMPANY, Cross-defendant and Respondent.

## COUNSEL

John E. deBrauwere for Cross-complainants and Appellants.

Sonnenschein, Nath & Rosenthal, Michael A. Barnes and Gregory L. Smith for Cross-defendant and Respondent.

## OPINION

**CROSKEY, Acting P. J.**—This appeal arises from the beating of two men who were attempting to film a political demonstration by gay rights activists in West Hollywood, California. The beating was administered by a cab driver who, at the time, was an employee of the cross-complainants Century Transit Systems, Inc., doing business as Celebrity Cab Co., Babaeian Transportation, Inc., Masood Babaeian and Mahmood Babaeian (collectively Century). When the two men sued Century for assault and battery and the negligent hiring, supervision and retention of the cab driver (and related causes of action not relevant to the dispute before us), Century tendered defense of the action to its insurer, American Empire Surplus Lines Insurance Company (American). When American denied coverage and refused to provide a defense, Century filed a cross-complaint for declaratory relief to resolve the coverage dispute. American responded with a motion for summary judgment based on the enforceability of an exclusion for assault and battery.

Our review of the undisputed facts reflected in this record, together with the relevant insurance policy provisions, satisfies us that no potential for coverage existed as to the underlying claim and that the trial court properly granted summary judgment. We therefore affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

The essential facts of this case are not in dispute.[1] On the evening of October 1, 1991, Richard Silar was operating a cab in West Hollywood, California. At the time he was an employee of Century acting in the course and scope of that employment. Apparently, a public political demonstration by a number of gay activists irritated Silar, who got out of his cab and made a number of verbal and physical threats towards the demonstrators. A witness to this incident telephoned Century and advised it of Silar's actions and threats of violence. However, Century did not take Silar off the street.

---

[1] Our recitation of the background facts is taken from the assault and battery complaint served on Century and for which it sought a defense from American.

Approximately two hours after this first encounter, Silar, again came upon the demonstration while transporting two passengers. This time, he exited his cab with a four-cell Maglite flashlight and used it to beat two men who were engaged in the act of videotaping the demonstration. This attack was unprovoked and continued until at least one of the men was beaten unconscious.

On November 18, 1991, the victims of this assault (hereinafter, the plaintiffs) filed an action against both Silar and Century. They alleged claims for assault and battery and related claims, including one for Century's negligent hiring, supervision and retention of Silar. Plaintiffs alleged that Century knew or should have known that Silar was a violent person with a propensity to cause harm to members of the general public, particularly to gay persons. Plaintiffs sought recovery of both compensatory and punitive damages.[2]

Century tendered defense of this lawsuit to American on December 13, 1991. American had previously issued a general liability policy to Century. Three provisions of the policy are relevant to our resolution of this matter. First, the policy promised indemnity for all damages Century became legally obligated to pay because of an "occurrence" which was defined in part as "an accident . . . which results in bodily injury . . . neither expected or intended from the standpoint of the insured." Second, the policy contained an assault and battery exclusion which provided that "No coverage shall apply under this policy for any claim, demand or suit *based on assault and battery* and assault shall not be deemed an accident, whether or not committed by or at the direction of the insured." (Italics added.) Finally, in a special liability endorsement, for which Century had paid an additional premium, there was a *modification of the definition of the term* "occurrence." That modification, entitled "Extended Bodily Injury Coverage," provided: "The definition of occurrence includes any intentional act *by or at the direction of the insured* which results in bodily injury, if such injury arises *solely from the use of reasonable force* for the purpose of protecting persons or property." (Italics added.)

On January 7, 1992, American denied coverage and refused to provide Century with a defense. Its grounds for this position were that the complaint, alleging an intentional assault and battery by Century's employee, (1) did not satisfy the definition of an occurrence and, in any event, (2) coverage

---

[2]Subsequently, on April 9, 1992, Silar was convicted in a jury trial of the crimes of assault with a deadly weapon (Pen. Code, § 245) and inflicting serious bodily injury (Pen. Code, § 243) on *each* of the plaintiffs.

was precluded by the plain terms of the assault and battery exclusion. Century, arguing that the action against it included claims for the negligent hiring, supervision and retention of Silar, asked American to reconsider its decision. American refused to do so. Century then filed the cross-complaint, which is the subject of this appeal, alleging claims for breach of contract, bad faith and declaratory relief.[3] American moved for summary judgment. The trial court, finding that the assault and battery exclusion was clear and unambiguous and dispositive of Century's claims of coverage, granted the motion. Century filed this timely appeal from the resulting judgment which was entered on January 10, 1994.

## CONTENTIONS

Century contends that summary judgment was improper because, when read as a whole, the terms of the policy, considered in light of the undisputed facts, created a potential for coverage. The existence of such potential was sufficient to establish American's duty to defend. Century advances two arguments: (1) Century's alleged negligent hiring, supervision and retention of Silar were independent of the assault and battery and provided a separate and distinct basis for coverage and (2) the special liability endorsement overrode the assault and battery exclusion.

## DISCUSSION

### 1. *Standard of Review*

■ We review de novo the legal effect and consequences of the undisputed facts demonstrated by the record. (*B & E Convalescent Center* v. *State Compensation Ins. Fund* (1992) 8 Cal.App.4th 78, 89 [9 Cal.Rptr.2d 894].) Absent a *factual* dispute as to the meaning of policy language, which we do not have here, the interpretation, construction and application of an insurance contract is strictly an issue of law. (*California Shoppers, Inc.* v. *Royal Globe Ins. Co.* (1985) 175 Cal.App.3d 1, 35 [221 Cal.Rptr. 171].) An appellate court, in such a circumstance, is not bound by the trial court's interpretation but is free to make its own determination. (*Delgado* v. *Heritage Life Ins. Co.* (1984) 157 Cal.App.3d 262, 270 [203 Cal.Rptr. 672].)

Century's arguments amount to a claim that there is a dispute about the meaning and application of critical policy terms and thus summary judgment

---

[3]Because this appeal only concerns the cross-complaint, neither Silar nor the plaintiffs are involved in the appeal.

must be precluded. However, it appears to be settled in California that a potential for coverage cannot be based on an unresolved dispute concerning a purely legal question or question of policy interpretation when the question is resolved favorably to the insurer. "We know of no case suggesting that an insurer has a duty to defend where the only potential for liability turns on the resolution of a *legal* question." (*A-Mark Financial Corp.* v. *CIGNA Property & Casualty Companies* (1995) 34 Cal.App.4th 1179, 1192 [40 Cal.Rptr.2d 808], italics added.)

### 2. *Application of the Assault and Battery Exclusion*

■ As American correctly argues, this case involves something more than a simple "intentional act" exclusion. The policy expressly excludes coverage for ". . . *any claim . . . based on assault and battery . . . .*" (Italics added.) This language places the focus not upon an insured's conduct or intent, but rather upon the type of event in which a plaintiff has sustained an injury. (*Essex Ins. Co.* v. *Yi* (N.D.Cal. 1992) 795 F.Supp. 319, 324, fn. 2.)

We can find no ambiguity in this language. ■ The principal rule of contract interpretation is to give effect to the parties' intent as expressed in the terms of the contract. (*Bay Cities Paving & Grading, Inc.* v. *Lawyers' Mutual Ins. Co.* (1993) 5 Cal.4th 854, 867 [21 Cal.Rptr.2d 691, 855 P.2d 1263].) Insurance policy terms are treated no differently and will be given the "objectively reasonable" meaning a lay person would ascribe to them. (*AIU Ins. Co.* v. *Superior Court* (1990) 51 Cal.3d 807, 822 [274 Cal.Rptr. 820, 799 P.2d 1253].) Moreover, the *context* in which a term appears is critical. " '[L]anguage in a contract must be construed in the context of that instrument as a whole, and in the circumstances of that case, . . .' " (*Bay Cities Paving, supra,* 5 Cal.4th at p. 867, quoting from *Bank of the West* v. *Superior Court* (1992) 2 Cal.4th 1254, 1265 [10 Cal.Rptr.2d 538, 833 P.2d 545].) In other words, there cannot be ambiguity in the abstract, that is, one unrelated to an application. While "reliance on [the] common understanding of language is bedrock[,] [¶] [e]qually important are the requirements of *reasonableness* and *context.*" (5 Cal.4th at p. 867, italics added.)

■ Given such principles, we can only construe the exclusionary language one way: a suit *based on assault and battery* is excluded no matter who commits it. It is the happening of that event which compels application of the exclusion. This conclusion is buttressed by the final words of the exclusion: ". . . and assault shall not be deemed an accident, whether or not committed by or at the direction of the insured." No California case has

considered this language but a Minnesota court has stated: "The only common sense definition attributable to the phrase 'whether or not committed by or at the direction of the insured' is 'whether committed by or at the direction of the insured, or *not* committed by or at the direction of the insured.' " (*Ross* v. *City of Minneapolis* (Minn.Ct.App. 1987) 408 N.W.2d 910, 913-914, fn. omitted.)

Century offers no different construction of this very clear language nor does it make any claim that any word or phase is capable of any other meaning. We thus can come to no other conclusion than that a claim *based* on assault and battery is excluded.

### 3. *The Exclusion Applies Irrespective of the Theory of Recovery Asserted Against the Insured*

As already noted, no California case has considered the application of this exclusion but, given its lack of ambiguity and its plain clear meaning, courts in other states have had no trouble concluding that such an exclusion precludes coverage of *any* claim based on assault and battery *irrespective* of the legal theory asserted against the insured. In *Ross* v. *City of Minneapolis*, *supra*, 408 N.W.2d 910, the claimant was attacked outside a sports complex and sued the city for inadequate security. Considering a nearly identical exclusion (which applied to an injury "caused by or arising directly or indirectly out of[4] or from an assault and battery . . ."), the court held that the claim arose from assault and battery, even though the claim against the city sounded in negligence, and therefore was excluded. (408 N.W.2d at p. 913.) Five years later, the same court decided a case in which a patron of a food fair was attacked by a third party and sued the sponsor for premises liability. Construing language identical to that involved here, the court concluded that the exclusion applied. "The assault and battery clause unambiguously excludes coverage when a claim is causally related to an assault or battery. Every court that has considered a similar or identical clause agrees. One court considering identical language stated that to interpret it otherwise 'would be to "torture" it to create ambiguities where such do not exist.'

---

[4]In our view the term "based on" has the same effect as "arising out of." "Arising out of" is a broad concept requiring only a "slight connection" or an "incidental relationship" between the injury and the excluded risk. (*Continental Cas. Co.* v. *City of Richmond* (9th Cir. 1985) 763 F.2d 1076, 1081.) Such language "requires [the court] to examine the conduct underlying the . . . lawsuit, instead of the legal theories attached to the conduct." (*Guaranty Nat. Ins. Co.* v. *International Ins. Co.* (7th Cir. 1993) 994 F.2d 1280, 1284; see also *Fibreboard Corp.* v. *Hartford Accident & Indemnity* (1993) 16 Cal.App.4th 492, 504-505 [20 Cal.Rptr.2d 376].)

[Citation.] American Empire has the contractual right to limit the coverage it provides, and it has exercised that right by including this clause in the policy." (*Roloff* v. *Taste of Minnesota* (Minn.Ct.App. 1992) 488 N.W.2d 325, 326; see also *American Empire Surplus Lines Ins.* v. *Bay Area Cab* (N.D.Cal. 1991) 756 F.Supp. 1287, 1290.)

Cases in a number of other states have come to the same conclusion. In *Cortinez* v. *Handford* (La.Ct.App. 1986) 490 So.2d 626, the plaintiff sued the owner of a saloon following an assault by another patron. The court applied the exclusion and stated: "The applicability of the policy exclusion is not affected by the fact that the insured's alleged negligence consisted of failing to exercise reasonable care to protect patrons, serving alcoholic beverages to intoxicated persons, failing to employ effective security personnel, and the like, separate from any allegations that the defendant insured directly engaged in the assault and battery. The policy does not provide coverage for particular acts of negligence but provides coverage for damages arising out of an occurrence. The occurrence which gave rise to the damages here, an assault and battery, is specifically excluded from coverage." (*Id.* at p. 628; see also *Wallace* v. *Huber* (La.Ct.App. 1992) 597 So.2d 1247, 1249; *Sphere Drake Ins. Co.* v. *Litchfield* (Ct.App. 1993) 313 S.C. 471 [438 S.E.2d 275, 277]; *Dynamic Cleaning* v. *First Financial Ins.* (1993) 208 Ga.App. 37 [430 S.E.2d 33, 34]; *Hermitage Ins. Co.* v. *Dahms* (N.D.Ill. 1994) 842 F.Supp. 319, 326; *Audubon Indem. Co.* v. *Patel* (S.D.Tex. 1993) 811 F.Supp. 264, 265; *Tarrant County Ice* v. *Equit. Gen. Life Ins.* (Tex.Ct.App. 1983) 662 S.W.2d 129, 132.)[5]

We find this plethora of authority to be persuasive and we see no reason not to give a similar effect in California to this very clear exclusionary language. The assault and battery is clearly the basis for the action against Century; the fact that the claim also includes separate negligent acts by Century cannot avoid the exclusion. Those alleged acts of negligence were *based on* the assault and battery committed by Silar on the plaintiffs. The exclusion therefore applies and Century cannot rely upon the allegations of negligence to create a potential for coverage.[6]

---

[5]Other cases have applied American's exclusionary policy language to "negligent supervision," "negligent hiring" and related theories. (*Terra Nova Ins. Co.* v. *North Carolina Ted., Inc.* (E.D.Pa. 1989) 715 F.Supp. 688, 691; *Terra Nova Ins. Co.* v. *Thee Kandy Store, Inc.* (E.D.Pa. 1988) 679 F. Supp. 476, 478; *Terra Nova Ins. Co.* v. *Nanticoke Pines, Ltd.* (D.Del. 1990) 743 F.Supp. 293, 297-298.)

[6]We summarily reject Century's alternative argument that the negligent hiring of Silar was a concurrent cause of plaintiffs' injuries. Century's contention rests upon the case of *Underwriters Ins. Co.* v. *Purdie* (1983) 145 Cal.App.3d 57 [193 Cal.Rptr. 248], which

### 4. *The Special Liability Endorsement Does Not Preclude Enforcement of the Assault and Battery Exclusion*

We also reject Century's argument that the language of the special liability endorsement conflicts with that of the exclusion and that this created an "ambiguity" which precluded summary judgment. First, that argument flies in the face of the general principles of policy construction already discussed. The policy must be read as a whole and it cannot be said that an exclusion is in "conflict" with an insuring clause. The very purpose of an exclusion is to withdraw coverage which, but for the exclusion, would otherwise exist.

Second, and of far greater importance, is that the endorsement, by its own terms, simply does not apply to this case. It modified the definition of "occurrence" to include any intentional act committed by or at the direction of the insured which results in bodily injury, *provided* that such injury "arises solely from *the use of reasonable force for the purpose of protecting persons or property.*" Leaving aside the question of whether Silar was *the insured*[7] under the policy, there has never been any claim that Silar's actions constituted "reasonable force" used to protect persons or property.[8] Indeed, Century has at all times conceded that his conduct amounted to an assault and battery. Silar's conviction of four criminal counts of assault on April 9,

involved significantly different policy language, as well as a misapplication of the concurrent cause doctrine discussed by the Supreme Court in *State Farm Mut. Auto. Ins. Co.* v. *Partridge* (1973) 10 Cal.3d 94 [109 Cal.Rptr. 811, 514 P.2d 123]. In *Purdie*, the plaintiff was shot by the insured's employee. He was not injured by two independent acts of negligence, but rather only one (i.e., the employee's act in shooting him). As we read *Purdie*, the negligent hiring or retention theory asserted against the employer was not an *independent cause* of the injury but rather a theory for imposing liability on a third party for an excluded injury. Unless the employee fired the gun, the injury would not have occurred. Therefore, liability for negligent hiring was wholly dependent upon an injury caused by excluded event and was not a true "independent" cause of the plaintiff's injury. We agree with those cases which have criticized the concurrent cause analysis endorsed and applied by *Purdie*. (*Atlas Assur. Co.* v. *McCombs Corp.* (1983) 146 Cal.App.3d 135, 147-148 [194 Cal.Rptr. 66]; *Hartford Fire Ins. Co.* v. *Superior Court* (1983) 142 Cal.App.3d 406, 413-415 [191 Cal.Rptr. 37, 39 A.L.R.4th 189]; *Safeco Ins. Co.* v. *Gilstrap* (1983) 141 Cal.App.3d 524, 532 [190 Cal.Rptr. 425]; *Continental Cas. Co.* v. *City of Richmond, supra,* 763 F.2d at p. 1082.)

[7] The phrase "*the* insured" refers to the insured who is seeking coverage, not to "*any*" insured. (*Fire Ins. Exchange* v. *Altieri* (1991) 235 Cal.App.3d 1352, 1361 [1 Cal.Rptr.2d 360].)

[8] Even if such a self-defense argument had a factual basis, the exclusion would still apply. An act of self-defense necessarily involves resistance to an assault and battery by another. Thus, the claim against the insured would still be based upon or arise from an assault and battery. (See, e.g., *St. Paul Surplus Lines Ins. Co.* v. *1401 Dixon's* (E.D.Pa. 1984) 582 F. Supp. 865, 868.) This conclusion simply underscores a major difference in application between the general "intentional acts" exclusion and the "assault and battery" language before us.

1992, settled the issue as a matter of law. It simply cannot be argued that the special liability endorsement has any application to this case.

## CONCLUSION

In sum, we conclude that American had no duty to indemnify or defend Century because the claim asserted by the plaintiffs was based on an assault and battery and a clear and unambiguous exclusion precluded coverage as a matter of law. The trial court therefore properly granted summary judgment.

## DISPOSITION

The judgment is affirmed. American shall recover its costs on appeal.

Kitching, J., and Aldrich, J., concurred.