[No. 68129-0-I.    Division One.    December 10, 2012.]

CAPITOL SPECIALTY INSURANCE CORPORATION, *Respondent*, v.
JBC ENTERTAINMENT HOLDINGS, INC., ET AL., *Appellants*.

*Mark W. Conforti* and *Ema Virdi-Sehra* (of *Dynan Conforti PS*), for appellants.

*Matthew J. McCafferty* and *Frank J. Steinmark* (of *McCafferty & Steinmark PLLC*), for respondent.

¶1 VERELLEN, J. — This case requires us to consider the application of a firearms exclusion in a commercial general liability (CGL) policy. The exclusion at issue denies coverage for bodily injury and property damage "that arises out of, relates to, is based upon, or attributable to the use of a firearm(s)."[1] We conclude the provision unambiguously excludes coverage for all claims arising from the March

---

[1] Clerk's Papers at 33.

2010 shooting at a nightclub, including those characterized as preshooting negligence claims, regardless of who used the firearm. We affirm.

## FACTS

¶2 JBC Entertainment Holdings Inc. operates Jillian's nightclub in Seattle. The CGL insurance policy JBC purchased from Capitol Specialty Insurance Corporation provided that "[w]e will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies."[2] The firearms exclusion excludes from coverage " '[b]odily injury' or 'property damage' that arises out of, relates to, is based upon, or attributable to the use of a firearm(s)."[3]

¶3 On March 21, 2010, an unknown person fired a gun at Jillian's, injuring patron Jackson Jacob Mika. To recover damages related to the shooting, Mika filed a complaint in January 2011 against JBC, JBC employee Michael Knudsen, JBC owners/shareholders Gemini Investors and Alpha Capital Partners Ltd., and nonemployee event promoter Marquis Holmes. Mika asserted that JBC should have provided enhanced security "such as 'wanding' for firearms, given the large number of hip hop/rap patrons[,] in order to keep the Plaintiff safe."[4] Mika's claims included negligent hiring, training, and supervision, and negligent failure to provide adequate security. All claims relate to the shooting itself; Mika did not claim any negligence occurred after the shooting.

¶4 JBC, Alpha, Gemini, and Knudsen tendered the defense of Mika's lawsuit to Capitol. Capitol agreed to defend under a reservation of rights and then filed this declaratory

---

[2] Clerk's Papers at 69.

[3] Clerk's Papers at 33.

[4] Clerk's Papers at 494.

judgment action to determine whether the policy covered Mika's claims. Capitol moved for summary judgment, arguing the firearms exclusion directly applies to all of Mika's claims "[r]egardless of the 'dressing up' of the shooting into different negligence theories."[5]

¶5 JBC, Alpha, Gemini, and Knudsen responded that the negligence claims fell outside of the firearms exclusion and that the exclusion was ambiguous about whether it applied to any firearms-related injury or only to the use of a firearm by the insured. Mika joined the response. The trial court granted Capitol's motion, ruling that the firearms exclusion "is binding, applicable and wholly precludes coverage for all claims, injuries and damages asserted by Jackson Jacob Mika."[6] JBC, Alpha, and Gemini (collectively JBC) appeal.[7]

## ANALYSIS

¶6 We review summary judgment and evidentiary decisions made in that context de novo.[8]

### Concurrent Cause Theory

¶7 JBC contends Mika's claims for negligent hiring, training, supervision, and security allege a concurrent and independent cause of his injuries and therefore fall outside the firearms exclusion. Although the application of the firearms exclusion to negligence claims is an issue of first

---

[5] Clerk's Papers at 149.

[6] Clerk's Papers at 476.

[7] Mika, Knudsen, and Holmes did not appeal.

[8] *Vallandigham v. Clover Park Sch. Dist. No. 400*, 154 Wn.2d 16, 26, 109 P.3d 805 (2005); *Folsom v. Burger King*, 135 Wn.2d 658, 663, 958 P.2d 301 (1998). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. *Vallandigham*, 154 Wn.2d at 26 (citing CR 56(c)). All facts and reasonable inferences are considered in the light most favorable to the nonmoving party, and summary judgment is appropriate only if, from all the evidence, reasonable persons could reach but one conclusion. *Id.*

impression in Washington, we rejected a similar argument in the context of an assault and battery exclusion in *McAllister v. Agora Syndicate, Inc.*[9] and adhere to the reasoning expressed therein.

¶8 Grant McAllister was injured in a fight at a nightclub.[10] He sued the club, alleging it was negligent in allowing his assailant to reenter the club after being removed following an altercation with another patron.[11] The club admitted liability, settled with McAllister, and assigned to him its rights under its insurance policy.

¶9 The policy excluded coverage for "any claim, demand or suit based on assault and/or battery, and assault and/or battery shall not be deemed an occurrence, whether or not committed by or at the direction of the insured."[12] Like JBC, McAllister argued that the negligence claims fell outside the exclusion. Relying on the policy's plain language, we disagreed:

> We find the assault and battery exclusion in the Agora policy to be unambiguous in its application to McAllister's claim, which is ultimately "based on" assault and battery in the sense that without first establishing the underlying assault, negligence cannot be proved.[13]

¶10 Our Supreme Court embraced the *McAllister* analysis as it pertains to claims of preassault negligence but recognized a distinction where a plaintiff claims the defendant's postassault negligence exacerbated his injuries. In *American Best Food, Inc. v. Alea London Ltd.*, nightclub staff removed patron George Antonio following a confrontation with Michael Dorsey, only to allow him to reenter

[9] 103 Wn. App. 106, 11 P.3d 859 (2000).

[10] *Id.* at 107.

[11] *Id.* at 108.

[12] *Id.* at 109.

[13] *Id.* at 111.

later.[14] Antonio confronted Dorsey again, and both men were removed. Once the two were outside the nightclub, Antonio shot Dorsey nine times. Security guards initially brought Dorsey inside. But then, at the club owner's direction, the guards " 'dumped him on the sidewalk.' "[15] Dorsey sued the club, alleging both preassault and postassault negligence. The nightclub's insurer refused to defend the suit on the basis of an assault and battery exclusion in the policy. Recognizing in other jurisdictions "a pattern of holding an insurer to a duty to defend in the case of postassault negligence," the Supreme Court held that the policy afforded coverage, but only for those injuries caused or enhanced by the club's postassault negligence.[16]

¶11 JBC argues *McAllister* and *Alea* are distinguishable because they involve assault and battery exclusions, not firearms exclusions, and because in both cases, the clubs' employees took some kind of action that contributed to the plaintiff's injuries, i.e., allowing patrons to return following altercations. In contrast, JBC argues, "no such action was taken by JBC, its employees and/or associates in this matter."[17] We find these distinctions immaterial. Mika's claims allege exclusively preassault negligence and depend entirely on the shooting. The claims thus "arise[ ] out of, relate[ ] to, [are] based upon, or attributable to the use of a firearm."[18] Accordingly, the firearms exclusion precludes coverage.

¶12 JBC relies on the California case, *Underwriters Insurance Co. v. Purdie*,[19] to argue otherwise. There, an insurance policy excluded coverage for injuries resulting from " 'any use[,] maintenance[,] or possession of a fire arm

---

[14] 168 Wn.2d 398, 402, 229 P.3d 693 (2010).

[15] *Id.* at 403.

[16] *Id.* at 408, 411.

[17] Appellant's Reply Br. at 14.

[18] Clerk's Papers at 33.

[19] 145 Cal. App. 3d 57, 193 Cal. Rptr. 248 (1983).

[sic] by insured or its agent or employee.' "[20] The insured knowingly hired a store clerk with a violent history.[21] While acting in the scope of his employment, that employee got into an argument and used the gun his employer kept on the premises to shoot a delivery man.[22] Although the court found the firearms exclusion was unambiguous and applicable, it concluded the claim was covered nevertheless because the insured's negligent hiring of a known violent person was an independent cause of the injury.[23]

¶13 *Purdie*'s concurrent, independent cause doctrine has been widely criticized, and the very court that issued the decision later declined to follow its reasoning. In *Century Transit Systems, Inc. v. American Empire Surplus Lines Insurance Co.*, an employee committed an assault while in the course of his employment.[24] The employer had notice of the same employee's violent encounter earlier that same day but took no action.[25] Victims of the assault sued, alleging negligent hiring, supervision, and retention. Century's insurer refused to defend or indemnify, arguing that an assault and battery exclusion precluded coverage for injuries from the intentional assault and battery. The exclusion provided, " 'No coverage shall apply under this policy for any claim, demand or suit based on assault and battery and assault shall not be deemed an accident, whether or not committed by or at the direction of the insured.' "[26]

¶14 Expressly rejecting its earlier decision in *Purdie*, the California Court of Appeals held that the exclusion unambiguously applied:

---

[20] *Id.* at 61.

[21] *Id.* at 62.

[22] *Id.*

[23] *Id.* at 71.

[24] 42 Cal. App. 4th 121, 124, 49 Cal. Rptr. 2d 567 (1996).

[25] *Id.* at 123-24.

[26] *Id.* at 124 (emphasis omitted).

The assault and battery is clearly the basis for the action against Century; the fact that the claim also includes separate negligent acts by Century cannot avoid the exclusion. Those alleged acts of negligence were based on the assault and battery committed . . . on the plaintiffs. The exclusion therefore applies and Century cannot rely upon the allegations of negligence to create a potential for coverage.[27]

¶15 The same is true here. JBC's alleged liability for negligence is wholly dependent upon the shooting, an occurrence that is specifically excluded from coverage.

## Ambiguous Policy Language

¶16 Language in an insurance policy is ambiguous if susceptible of two different but reasonable interpretations.[28] Ambiguous policy language must be liberally construed in the insured's favor.[29] That is especially so in the context of exclusionary clauses.[30] "But a court may not give an insurance contract a 'strained or forced construction which would lead to an extension or restriction of the policy beyond what is fairly within its terms,' "[31] nor may it use the "construe against the insurer" rule to make a plain agreement ambiguous.[32]

¶17 The firearms exclusion in JBC's policy explicitly provides that "[t]his insurance does not apply to . . . '[b]odily injury' or 'property damage' that arises out of, relates to, is based upon or attributable to the use of a firearm(s)."[33] JBC contends this language is ambiguous

[27] *Id.* at 128.

[28] *McAllister*, 103 Wn. App. at 109.

[29] *Id.*

[30] *Id.*

[31] *Id.* (internal quotation marks omitted) (quoting *Tewell, Thorpe, & Findlay, Inc. v. Cont'l Cas. Co.*, 64 Wn. App. 571, 575, 825 P.2d 724 (1992)).

[32] *Id.* at 110.

[33] Clerk's Papers at 70, 33.

such that "an average purchaser of insurance could fairly conclude that the firearms exclusion applies only if the insured itself uses a firearm in connection with its business."[34] We disagree.

¶18 JBC relies on the Missouri decision in *Braxton v. United States Fire Insurance Co.*[35] There, an intoxicated gas station attendant shot Terry Braxton, who later obtained a judgment against the station owner for negligent supervision.[36] The owner's insurer denied coverage based on a typewritten policy addendum excluding coverage for " 'bodily injury and property damage arising out of the ownership or use of any firearm.' "[37] The policy's preprinted exclusions provision stated that the insurance did not apply to bodily injury or property damage arising out of certain enumerated acts " 'by,' 'for,' or 'on behalf of' " the named insured."[38] The firearms endorsement itself did not specify whether the ownership or use of the firearm had to be "by, for, or on behalf of" the named insured.[39] The court therefore held that the exclusion did not "unequivocally exclude acts arising out of the ownership or use of a firearm by *any* person under *any* circumstances" and that a "reasonable person reading the exclusion in context could fairly conclude that the exclusion applied only if the insured himself owned or used a firearm in connection with his business, or if someone else used the firearm 'for' him or 'on his behalf.' "[40] Because the insured did not own or use the firearm and it was not used for him or on his behalf, the court concluded that the exclusion did not apply.

---

[34] Appellant's Br. at 23.

[35] 651 S.W.2d 616, 620 (Mo. Ct. App. 1983).

[36] *Id.* at 617.

[37] *Id.*

[38] *Id.* at 618.

[39] *Id.*

[40] *Id.* at 619.

¶19 Here, neither the exclusions portion of JBC's policy nor the firearm exclusion contains the "by, for, or on behalf of" language that caused the ambiguity in *Braxton*. Instead, the policy simply says, "This insurance does not apply to" an enumerated list, to which the parties added " '[b]odily injury' or 'property damage' that arises out of, relates to, is based upon or attributable to the use of a firearm(s)."[41] This language is unambiguous, and it unequivocally excludes coverage from bodily injury arising from the use of a firearm. To interpret the exclusion to apply only to the insured would be contrary to the plain language of the policy.[42]

¶20 JBC contends that Capitol could have added clarifying language if it intended to exclude coverage for claims arising out of the use of a firearm by someone other than the insured. As an example of such clarifying language, JBC points to *McAllister*, where the assault and battery exclusion disclaimed coverage for claims " 'based on assault and/or battery, and assault and/or battery shall not be deemed an occurrence, *whether or not committed by or at the direction of the insured.*' "[43]

¶21 Even if we were inclined to look beyond the plain language of the firearm exclusion clause itself, we would find it more compelling to consider the use of clarifying language in the policy at issue than the language used in other policies.[44] Capitol included "by or on behalf of the insured" language to narrow the scope of several other exclusions. For example, the fireworks exclusion pertains

---

[41] Clerk's Papers at 70, 33.

[42] *See Hunt v. Capitol Indem. Corp.*, 26 S.W.3d 341, 344-45 (Mo. Ct. App. 2000) (distinguishing *Braxton* on similar grounds).

[43] *McAllister*, 103 Wn. App. at 109 (emphasis added).

[44] *See, e.g., Black v. Nat'l Merit Ins. Co.*, 154 Wn. App. 674, 681-82, 226 P.3d 175 (2010) (" 'In the absence of anything in the context of a contract clearly indicating a contrary intent, when the same word is used in different parts of the contract, it will be presumed to be used in the same sense throughout the contract.' " (quoting *Holter v. Nat'l Union Fire Ins. Co.*, 1 Wn. App. 46, 50, 459 P.2d 61 (1969))).

only to " '[b]odily injury' or 'property damage' that arises out of, relates to, is based upon, or attributable to: (a) the use, sale or possession of fireworks *by, or on behalf of, any insured.*"[45] And the "excluded activities endorsement," which precludes coverage for bodily injury and property damage arising out of activities like tobogganing, flame shows, and mechanical bull rides, expressly provides that "this exclusion only applies when the foregoing activities are performed with the knowledge or consent of" the insured, additional insured, or concessionaires using the premises of the insured.[46] Since the firearms exclusion contains no such limiting language, we conclude a reasonable consumer would give the firearms exclusion the literal reading its clear terms demand; the exclusion for any injury or damage that arises out of, relates to, is based upon, or attributable to the use of a firearm(s) has not been limited to use of a firearm by or on behalf of the insured.[47]

## *Motion To Strike*

¶22 JBC moved to strike portions of a declaration filed in support of Capitol's motion for summary judgment. Kent Lawson, Capitol's vice president of claims, stated, among other things:

15. To my knowledge, at no time prior to obtaining the Capitol Policy did the JBC Insureds object to or seek clarification from Capitol regarding the Firearms Exclusion.

16. To my knowledge, at no time prior or subsequent to obtaining the Capitol Policy did the JBC Insureds affir-

---

[45] Clerk's Papers at 30 (emphasis added).

[46] Clerk's Papers at 31.

[47] The parties devote a portion of their briefing to the distinction between an insurer's duty to defend and duty to indemnify. The controlling issue on appeal of this declaratory judgment action is whether the firearm exclusion applies. Because it does, JBC establishes no ongoing duty to defend. *See Kirk v. Mt. Airy Ins. Co.*, 134 Wn.2d 558, 561, 951 P.2d 1124 (1998) ("Although an insurer has a broad duty to defend, alleged claims which are clearly not covered by the policy relieve the insurer of its duty.").

matively seek or request from Capitol coverage options for bodily injury or property damage relating to the use of a firearm.

17. To my knowledge, at no time prior or subsequent to obtaining the Capitol Policy did the JBC Insureds indicate any belief that they interpreted the Firearms Exclusion to only apply to the use of a firearm by an insured. (JBC first asserted this alleged belief as part of its motion to vacate the order and judgment of default.) And, of course, Capitol does not interpret the Firearms Exclusion in that manner, nor does it believe that it is a reasonable interpretation of this unambiguous exclusion.[48]

¶23 JBC argues Lawson's testimony does not satisfy the CR 56(e) requirement that the affidavit "be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." JBC points out that Lawson did not state he was the insurance agent, that he had personal knowledge of the negotiations with JBC, or that he had personal knowledge of the application process relating to the policy.

¶24 The court denied the motion to strike, ruling that the objection was "well taken and goes to the weight rather than admissibility of Mr. Lawson's statements."[49] We agree. The testimony was expressly limited to Lawson's personal knowledge as vice president of claims. The limits of Lawson's personal knowledge go to the weight and not the admissibility of his declaration.[50]

## CONCLUSION

¶25 The firearms exclusion in the CGL policy unambiguously excludes coverage for all claims arising from the

---

[48] Clerk's Papers at 172.

[49] Clerk's Papers at 474.

[50] We further note that none of Lawson's statements are dispositive in any event.

shooting at the nightclub, including those characterized as preshooting negligence claims, regardless of who used the firearm.

¶26 Affirmed.

SCHINDLER and LAU, JJ., concur.