Filed 9/16/13

*CERTIFIED FOR PUBLICATION*


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE


| | |
|---|---|
| MOUNT VERNON FIRE INSURANCE CORPORATION,<br><br>    Plaintiff, Cross-Defendant and Respondent;<br><br>    v.<br><br>OXNARD HOSPITALITY ENTERPRISE, INC. et al.,<br><br>    Defendants, Cross-Complainants, and Appellants. | B244569<br><br>(Los Angeles County Super. Ct. No. BC461268) |


APPEAL from a judgment of the Superior Court of Los Angeles County,

Michelle R. Rosenblatt, Judge.  Affirmed.

HollinsLaw, Kathleen Mary Kushi Carter and Christine R. Arnold for Plaintiff,

Cross-Defendant and Respondent.

Law Offices of Russell G. Petti, Russell G. Petti; Kantor & Kantor and

Glenn R. Kantor for Defendants, Cross-Complainants and Appellants.

This appeal involves the interpretation of the term "physical contact" in an insurance liability policy's "Assault or Battery" exclusion. Appellant, Roberta Busby (Busby) sued her employer, Oxnard Hospitality Enterprise, Inc., and others (collectively, Oxnard), for negligence after she sustained serious bodily injuries when a third party threw a glass full of a flammable liquid on her and set her on fire (underlying action). The trial court entered a $10 million stipulated judgment in Busby's favor against Oxnard.[1]

In the instant action, Mount Vernon Fire Insurance Company (Insurer), the liability insurer for Oxnard, sought a declaratory judgment that it had no duty to indemnify Oxnard (and/or its owners), nor to pay any claim of Busby or her minor children arising from this incident. Insurer relied entirely on the policy's "Assault or Battery" exclusion. Based on that exclusion, the trial court granted Insurer's motion for summary judgment.

After a review of the record and the policy's provisions, we affirm. The term "battery," as used in that exclusion, is defined as "*physical contact* with another without consent" (italics added). We reject Busby's argument that such definition requires a direct "body-to-body" contact. Instead, we conclude that it necessarily includes a striking or touching as occurred in this case.

---

[1] Contemporaneously with entry of the stipulated judgment, Oxnard assigned all of its rights under Oxnard's insurance policy to Busby.

2

## *FACTUAL AND PROCEDURAL BACKGROUND*

Busby, a nightclub dancer, suffered bodily injury on Oxnard's premises shortly after she had completed her shift when a patron of the nightclub threw flammable liquid on her and then set her on fire. Her assailant was later convicted of aggravated mayhem and torture. In the underlying action, Busby sued Oxnard and others for negligent failure to provide adequate security (underlying action). Included in Busby's original complaint was a cause of action on behalf of her children, Marissa Marie Morales and Gabriella Miriam Harris (minor children). That cause of action was for negligent infliction of emotional distress (NIED). Oxnard filed a demurrer.

Because minor children were absent when Busby was attacked, the trial court sustained the demurrer with leave to amend as to their cause of action. The minor children, however, did not amend and took no further action to pursue their claims. Busby's first amended complaint did not include the cause of action originally asserted by the minor children, but alleged only her causes of action for battery against her assailant and for negligence against her employer. The record does not disclose that Oxnard ever sought or obtained dismissal of the minor children's claim against it, or that the minor children ever filed a voluntarily dismissal.

While the underlying action was pending, the Insurer brought the instant action for declaratory relief. It sought a judgment declaring that it had no duty under the policy to pay any damages that might be awarded against Oxnard in the underlying action. Insurer relied on the "Assault or Battery" exclusion in the liability policy issued to Oxnard. That endorsement excluded coverage for "all 'bodily injury' . . . arising out

3

of 'assault' or 'battery' . . . including but not limited to 'assault' or 'battery' arising out of or caused in whole or in part by negligence . . . . [¶] 'Battery' means negligent or intentional wrongful physical contact with another without consent that results in physical or emotional injury."

The underlying action was resolved by a stipulated judgment against Oxnard in the amount of $10 million. As already noted, Oxnard assigned all of its rights against Insurer to Busby.

Subsequently, in the instant action, Insurer filed a motion for summary judgment against Busby.[2] In Busby's opposition to Insurer's motion for summary judgment, she argued that the exclusion's definition of battery required actual "body-to-body" physical contact. Since that admittedly did not occur here, she contends that the exclusion did not apply and thus there *was* coverage under the policy. She also argued that "physical contact" plainly means "actual physical touching between one person and another" and cited a dictionary's "definition of 'physical' [as] 'of or relating to the body[]' [citation]" and " 'contact' [as] 'a touching or meeting of bodies[]' [citation]."

Insurer, in its motion for summary judgment, argued otherwise. It contended that "['physical contact'] means the union or junction of things that have a material existence, or the touching of material things" and cited a different dictionary's

---

[2]     Based on the assignment of rights under the policy to Busby, she filed a cross complaint for breach of insurance contract, breach of the implied covenant of good faith and fair dealing, negligence, and third party judgment pursuant to Insurance Code, section 11580, subdivision (b)(2) (the so-called "direct action" statute). Included in Insurer's motion for summary judgment were those cross complaint causes of action.

4

definition of "physical" as " 'of or relating to natural sciences,' 'having material existence' and 'of or relating to the body[] [citation]."

The trial court agreed with Insurer and granted its motion. Busby and minor children filed a timely notice of appeal.

### CONTENTIONS

Busby contends that the liability policy covers her judgment against Oxnard because it only excludes a battery defined as "physical contact." She argues that "physical contact" requires direct body-to-body contact, and because her negligence suit arose from an incident involving no direct body-to-body contact, the "Assault or Battery" exclusion cannot apply. For their part, Busby's minor children contend that the trial court lacked jurisdiction to declare their rights and obligations under the Insurer's policy because no actual controversy existed between them and Insurer. They claim that no controversy actually existed because they had never pursued their NIED cause of action in the underlying action after the ruling on Oxnard's demurrer.

### DISCUSSION

1.    *Standard of Review*

"We determine de novo whether a triable issue of material fact exists and whether the moving party was entitled to summary judgment as a matter of law." (*Faust v. California Portland Cement Co.* (2007) 150 Cal.App.4th 864, 877.) "Absent a *factual* dispute as to the meaning of the policy language, which we do not have here, the interpretation, construction and application of an insurance contract is strictly an

5

issue of law." (*Century Transit Systems, Inc. v. American Empire Surplus Lines Ins. Co.* (1996) 42 Cal.App.4th 121, 125 (*Century Transit*).)

       2.      *The "Assault or Battery" Exclusion Bars Coverage*

           a.      *Analysis of the Exclusionary Language*

The exclusion at issue, in relevant parts, provides the following. "This insurance does not apply to: [¶] Any claim, demand or 'suit' based on 'assault' or 'battery', or out of any act or omission in connection with the prevention or suppression of any 'assault' or 'battery', including the use of reasonable force to protect persons or property, whether caused by . . . an insured . . . [or] patrons . . . . Further, no coverage is provided for any claim, demand or suit in which the underlying operative facts constitute 'assault' or 'battery'. [¶] This exclusion applies to all 'bodily injury' . . . arising out of 'assault' or 'battery' . . . including but not limited to 'assault' or 'battery' arising out of or caused in whole or in part by negligence . . . . [³] [¶] 'Assault' means the threat or use of force on another that causes that person to have apprehension of imminent harmful or offensive conduct, whether or not the threat or use of force is alleged to be negligent, intentional or criminal in nature.[⁴] [¶] 'Battery'

---

[3]    This language clearly defeats any argument that the exclusion has no application because Busby's theory of recovery is in negligence. "*[A]ny* claim based on assault and battery *irrespective* of the legal theory asserted against the insured" activates the exclusion. (*Century Transit, supra,* 42 Cal.App.4th at p. 127, italics in original.)

[4]    Interestingly, Insurer never asserts that the "Assault" exclusion applies to the instant case even though throwing flammable liquid on someone would cause apprehension of imminent harmful conduct (i.e. apprehension of being set on fire). Arguably, the "Assault" exclusion bars coverage regardless of the plain meaning of "physical contact."

means negligent or intentional physical contact with another without consent that results in physical or emotional injury."

Apart from the endorsement's inclusive language, the tort of battery generally is not limited to direct body-to-body contact. In fact, the commentary to the Restatement Second of Torts clearly states that the "[m]eaning of 'contact with another's person' " does not require that one "should bring any part of his own body in contact with another's person . . . . [One] is liable [for battery] in this Section if [one] throws a substance, such as water, upon the other." (Rest.2d Torts § 18, com. c.) Consistent with the Restatement, in *Century Transit, supra,* 42 Cal.App.4th 121, the court effectively applied that rule. The insured's employee had struck demonstrators with a flashlight while acting in the scope of employment, and the court still applied the "Assault or Battery" exclusion even though no direct body-to-body contact occurred. (*Id.* at p. 130.)

b. *The Exclusion Is Not Ambiguous*

We have no trouble concluding that the exclusion at issue is free from ambiguity. The following principles govern our interpretation of the term "physical contact." "Insurance policies are contracts and, therefore, are governed in the first instance by the rules of construction applicable to contracts. Under statutory rules of contract interpretation, the mutual intention of the parties at the time the contract is formed governs its interpretation. [Citation.] Such intent is to be inferred, if possible, solely from the written provisions of the contract. [Citation.] The 'clear and explicit' meaning of these provisions, interpreted in their 'ordinary and popular sense,' controls judicial

7

interpretation unless 'used by the parties in a technical sense, or unless a special meaning is given to them by usage.' [Citation.] If the meaning a layperson would ascribe to the language of a contract of insurance is clear and unambiguous, a court will apply that meaning. [Citations]." (*Montrose Chemical Corp. v. Admiral Ins. Co.* (1995) 10 Cal.4th 645, 666–667.) " 'Courts will not adopt a strained or absurd interpretation in order to create an ambiguity where none exists.' [Citation.]" (*Alameda County Flood Control & Water Conservation Dist. v. Department of Water Resources* (2013) 213 Cal.App.4th 1163, 1180.) We seek a common sense interpretation which avoids absurd results. (*Cold Creek Compost, Inc. v. State Farm Fire & Casualty Co.* (2007) 156 Cal.App.4th 1469, 1479.)

"The principal rule of contract interpretation is to give effect to the parties' intent as expressed in the terms of the contract. (*Bay Cities Paving & Grading, Inc. v. Lawyers' Mutual Ins. Co.* (1993) 5 Cal.4th 854, 867.) Insurance policy terms are treated no differently and will be given the 'objectively reasonable' meaning a lay person would ascribe to them. (*AIU Ins. Co. v. Superior Court* (1990) 51 Cal.3d 807, 822.) Moreover, the *context* in which a term appears is critical. ' "[L]anguage in a contract must be construed in the context of that instrument as a whole, and in the circumstances of that case, . . . ." ' (*Bay Cities Paving, supra,* 5 Cal.4th at p. 867, quoting from *Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1265.) In other words, there cannot be ambiguity in the abstract, that is, one unrelated to an application. While 'reliance on [the] common understanding of language is bedrock[,] [¶] [e]qually important are the requirements of *reasonableness* and *context*.' (*Bay Cities Paving,*

*supra,* 5 Cal.4th at p. 867, italics added.)"  (*Century Transit, supra,* 42 Cal.App.4th at

p. 126.)

Applying those principles to this case leaves no question that the policy's

definition of battery extends to the intentional attack made on Busby.[5]  Had her assailant

struck Busby with a closed fist, there could be no argument that such a striking was not

a "battery" under Oxnard's policy.  Could the answer be any different if that fist

contained a glass container that was used to strike Busby?  Certainly no reasonable

person would make such an argument.  How, then, could or should the result be any

different if the glass container were filled, as in this case, with a flammable substance

used to set Busby afire?  As we pointed out in *Century Transit,* "reasonableness and

context" are important.  Neither Oxnard, nor its assignee Busby, could have had

*reasonable expectations* to the contrary.

Busby argues that *Century Transit* does not control the result in this case,

because Insurer's policy, unlike the policy at issue in *Century Transit,* expressly defined

battery as "physical contact," and "physical" qualifies the general language of "contact

with another's person."[6]  Case law, however, holds otherwise.

---

[5]     Indeed, Busby herself alleged a *battery* cause of action against her assailant in her complaint in the underlying action.

[6]     Busby relies on *In re Keith T.* (1984) 156 Cal.App.3d 983, which holds that "physical contact" in the *sexual* battery context requires "actual direct contact with the skin of the intimate part of another person." (*Id.* at p. 986.)  Sexual battery, however, is distinct from, but related to, traditional battery (i.e. one guilty of sexual battery is also guilty of battery, but not necessarily vice versa).  Because no skin contact occurred, the court in *Keith T.* revealingly reversed the sexual battery conviction and "remanded . . . for findings on the lesser included offense of battery," (*id.* at p. 989)

9

In *Inter-Insurance Exchange v. Lopez* (1965) 238 Cal.App.2d 441 (*Lopez*) the insured's automobile insurance policy covered damages from "a hit-and-run automobile 'which causes bodily injury to an insured *arising out of physical contact of such automobile with the insured.*' " (*Id.* at p. 442.) Because the uninsured hit-and-run vehicle, "Car X," only indirectly struck the insured's vehicle (it first struck "Car B and [then] propelled it into Car C," the insured's vehicle), the court needed to resolve "whether there was physical contact between [Car C] and [Car X] so as to bring the accident within the coverage of the [insured's] policy." (*Id.* at p. 443.) The court applied a common-law battery analogy and held that similar to how "[a] touching which resulted from an instrument directly set in motion by a defendant . . . satisfied the requirement of bodily contact," so did "a direct application of force, as by Car X striking Car B and forcing it to hit Car C, qualif[y] as physical contact within [its] meaning." (*Id.* at pp. 445-446.) Similarly, in this case, the exclusion's definition of battery as "physical contact with another" does not distinguish between directly striking an individual and striking an individual through an intermediary object.[7]

---

which does not require direct body-to-body touching. Therefore, adopting the *Keith T.* court's "restrictive rather than [] general meaning" is not applicable here. (*Id.* at p. 987.) For this reason, we believe Busby's heavy reliance on the criminal sexual battery statutes is misplaced.

[7] Arguably, unlike *Lopez*, the interpretation here involves the breadth of an exclusion, and courts have traditionally interpreted the scope of coverage more broadly than the breadth of an exclusion. However, when the *Lopez* court interpreted the scope of coverage, it interpreted "physical contact" as codified in Insurance Code, section 11580.2. Therefore, the *Lopez* holding was based on statutory interpretation, not the broad interpretation of the scope of coverage.

### c. *Our Analysis is Consistent with Other Jurisdictions*

Persuasive federal and New York cases also apply the common law definition of battery to "Assault or Battery" exclusions. (See *Mount Vernon Fire Ins. Co. v. DLRH Associates* (S.D.N.Y.1997) 967 F.Supp. 105, 111 affd. *sub nom. Mount Vernon Fire Ins. Co. v. Henry* (2d Cir.1998) 152 F.3d 919 [concluding that " 'the phrase "assault and battery" is a legal term of art which encompasses both the common law torts of assault and battery.' "]; see also *United National Ins. Co. v. Waterfront New York Realty Corp.* (2d Cir.1993) 994 F.2d 105, 108 [holding " 'battery' cover[s] all types of 'qualitatively different' situations . . . [and] subsume[s] all forms of tortious menacing and unwanted touching"].) In fact, New York common law relevantly defines "battery" as intentional wrongful *physical contact* with another person without consent. (See *Tower Ins. Co. of New York v. Old Northern Blvd. Restaurant Corp.* (N.Y.App.Div. 1997) 666 N.Y.S.2d 636, 637.) When New York courts apply the common law definition to an "Assault or Battery" exclusion, they do not distinguish between a battery from "body-to-body" contact and a battery from an object set in motion by the defendant's action. For example, in *Mark Mc Nichol Enterprises, Inc. v. First Financial Ins. Co.* (N.Y. App. Div. 2001) 726 N.Y.S.2d 828, the court held that the insurer had no duty to indemnify the insured because the battery exclusion barred coverage in an action in which a "patron in the tavern was injured when she was struck in the face by a beer bottle that had been thrown during a fight." (*Id.* at p. 828.) The decision implies that "physical contact" does not require skin-to-skin contact and includes contact with objects set in motion (i.e., thrown bottles).

11

Similarly, here, the insurance policy's "Assault or Battery" exclusion uses the same language as New York's common law definition of battery. Consistent with New York authority, the insurance policy at issue here does not provide coverage for Busby's damages despite her attempt to argue that "physical contact," as provided in the exclusion, required direct body-to-body contact.[8]

3. *The Court Properly Granted a Judgment for Declaratory Relief to Insurer Against Minor Children*

The above resolution of the case on the merits necessarily also resolves the procedural issue raised by the minor children. Once the court validly declared that the Insurer had no obligations to its insured, Oxnard, for any damages arising from the attack on Busby, that conclusion necessarily extends to any claim that any injured third party may have asserted resulting from the incident. Therefore, because the claim of minor children clearly arises from an "Assault or Battery," Insurer's policy does not cover their damages.

Minor children contend that even if the exclusion applies, the trial court lacked jurisdiction to enter a judgment against them because no actual controversy existed. However, the NIED cause of action from the original complaint in the underlying action

---

[8] It is relevant to note that California courts similarly do not distinguish between body-to-body battery and battery involving objects. For example, in *People v. Puckett* (1975) 44 Cal.App.3d 607, the court held that "[e]ven though pushing a door cannot be deemed a harmful injury, the pushing of a door which was touching the prosecutrix could be deemed an offensive touching and a battery is defined as a harmful *or offensive* touching." (*Id.* at pp. 614-615; see also CACI No. 1300 [providing that civil battery occurs when the defendant wrongfully touched the plaintiff or caused the plaintiff to be touched].)

is technically still unresolved because "[a]n order sustaining a demurrer is . . . not on its face a final judgment." (*Thaler v. Household Finance Corp.* (2000) 80 Cal.App.4th 1093, 1098.) Until the cause of action is dismissed, the litigation remains procedurally open and an actual controversy remains. The trial court did not err when it declared the rights and obligations between Insurer and minor children.

### DISPOSITION

The judgment against Busby and minor children is affirmed. Insurer shall recover its costs on appeal.

### CERTIFIED FOR PUBLICATION

CROSKEY, J.

WE CONCUR:

KLEIN, P. J.

KITCHING, J.

13