Filed 2/10/25  Abrams v. True Bullion CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| CYNTHIA ABRAMS, | B335814 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 21VECV01020) |
| v. | |
| TRUE BULLION LLC, et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County, Valerie Salkin, Judge.  Affirmed.

Lewis Brisbois Bisgaard & Smith, Corinne C. Bertsche, Lann G. McIntyre and Rita R. Kanno for Defendants and Appellants.

Vardapour Law Group and Patrick Vardapour for Plaintiff and Respondent.

————————————————

This is an appeal from an order denying a motion to compel arbitration filed by defendants and appellants True Bullion LLC, Subculture Services LLC, Anthony Allen Anderson, and Agnes Viacrucis.[1] The trial court found that plaintiff and respondent Cynthia Abrams's employment-related claims against appellants do not fall within the scope of her arbitration agreement with True Bullion. As an alternative ground for denial of the motion, the court also found appellants waived their right to compel arbitration.

Appellants fail to show the trial court erred in concluding that the parties did not agree to arbitrate the instant controversy. The arbitration clause in question provides: "The Parties agree that unless specifically provided to the contrary in this Agreement, any Grievance shall be resolved exclusively by binding Arbitration." The contract that contains this clause is a confidentiality agreement between Abrams and True Bullion that was executed months after Abrams began working for True Bullion. The agreement does not purport to govern all aspects of Abrams's relationship with appellants, and none of Abrams's claims in this case involves her obligations under that contract. Accordingly, the trial court correctly found that the parties did not intend to submit all employment-related claims to binding arbitration. We thus affirm the order denying appellants' motion without addressing the alternative ground for the trial court's ruling.

---

[1] We refer to True Bullion LLC as "True Bullion," Subculture Services LLC as "Subculture," and all four appellants collectively as "appellants."

2

## PROCEDURAL BACKGROUND[2]

We summarize only those facts pertinent to our resolution of this appeal.

In August 2021, Abrams filed a complaint against appellants, alleging: (1) failure to provide employee/personnel records; (2) breach of written contract; (3) breach of oral contract; (4) breach of implied-in-fact contract; (5) common count (services rendered); (6) illegal deductions from wages; (7) fraud; (8) violation of Penal Code section 496; (9) failure to pay wages for missed rest periods; (10) failure to provide accurate, itemized wage statements; (11) waiting time penalties; (12) violation of the unfair practices/competition law; and (13) failure to pay minimum wages.

In her complaint, Abrams asserts True Bullion and Subculture are "in the business of selling precious metals such as gold and silver coins and bullion directly to consumers"; Anderson is True Bullion's and Subculture's "manager, principal, and/or self-declared 'Senior Partner' "; and Viacrucis is True Bullion's and Subculture's "Chief Accounting Officer and/or Director of Human Resources . . . ."[3] Appellants employed Abrams as an in-house salesperson from May 2019 to March 2021. Appellants willfully misclassified Abrams as an independent contractor and

_____

[2] We derive our Procedural Background in part from admissions made by the parties in their appellate briefing and undisputed aspects of the trial court's order. (*Association for Los Angeles Deputy Sheriffs v. County of Los Angeles* (2023) 94 Cal.App.5th 764, 772, fn. 2 [utilizing this approach] (*Association for Los Angeles Deputy Sheriffs*).)

[3] The remainder of this paragraph summarizes certain allegations from Abrams's complaint.

perpetrated several Labor Code violations against her. After appellants terminated Abrams, they promised to promote her if she returned to work and released them from all liability for misconduct.

In August 2023, appellants moved to compel arbitration and stay the action. Abrams opposed the motion, and appellants filed a reply.

On December 20, 2023, the trial court denied appellants' motion. The court identified two grounds in support of its ruling: (1) "Abrams's claims against [appellants] do not fall within the scope of the parties' agreement to arbitrate," and (2) appellants "waived their ability to arbitrate this matter" by (a) moving to compel arbitration two years after Abrams filed her complaint and (b) previously representing to the court through counsel that "Abrams did not have an arbitration agreement." The arbitration agreement in question is a clause of a "NON-DISCLOSURE/NON-CIRCUMVENTION/NON-COMPETITION AGREEMENT" (NDA) between Abrams and True Bullion. In rendering its decision, the trial court found it did not need to "reach a determination as to the parties' other arguments regarding whether the NDA is legally enforceable" (e.g., whether appellants properly authenticated the contract).[4]

On January 10, 2024, appellants timely appealed the trial court's order denying their motion.[5]

_____

[4] We describe pertinent aspects of the NDA and the trial court's order, respectively, in greater detail in Discussion, parts A–B, *post*.

[5] (See also Code Civ. Proc., § 1294, subd. (a) ["An aggrieved party may appeal from: [¶] . . . An order dismissing or denying a petition to compel arbitration."].)

4

## APPLICABLE LAW AND STANDARDS OF REVIEW

"On a petition to compel arbitration, the trial court must first determine whether an 'agreement to arbitrate the controversy exists.' [Citation.] 'Because the existence of the agreement is a statutory prerequisite to granting the petition, the petitioner bears the burden of proving its existence by a preponderance of the evidence.' [Citation.]" (*Bannister v. Marinidence Opco, LLC* (2021) 64 Cal.App.5th 541, 543.)

" ' "Under California law, ordinary rules of contract interpretation apply to arbitration agreements. . . . ' "The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties. . . ." ' " ' [Citation.]" (*Western Bagel Co., Inc. v. Superior Court* (2021) 66 Cal.App.5th 649, 662 (*Western Bagel Co., Inc.*).)[6] "As a general rule, arbitration should be upheld ' " 'unless it can be said with assurance that an arbitration clause is not susceptible to an interpretation covering the asserted dispute.' " ' [Citations.] 'Nonetheless, this policy does not override ordinary principles of contract interpretation. "[T]he contractual terms themselves must be carefully examined before the parties to the contract can be ordered to

---

[6] During the trial court proceedings, appellants argued that the Federal Arbitration Act (FAA, 9 U.S.C., § 1 et seq.) applies to the NDA. The trial court did not address whether the FAA governs, and appellants do not clarify whether they are reasserting that position on appeal. Appellants' lack of clarity on this point has no impact on our conclusion that the trial court did not err in its interpretation of the NDA. (See *Western Bagel Co., Inc.*, *supra*, 66 Cal.App.5th at p. 662 [" ' "[E]ven when the [FAA] applies, interpretation of the arbitration agreement is governed by state law principles. . . ." ' "].)

5

arbitration . . . .  [Citation.]" ' ' "[T]he terms of the specific arbitration clause under consideration must reasonably cover the dispute as to which arbitration is requested." ' [Citation.]" (*Ahern v. Asset Management Consultants, Inc.* (2022) 74 Cal.App.5th 675, 687–688 (*Ahern*).)

" ' "Whether an arbitration agreement applies to a controversy is a question of law to which the appellate court applies its independent judgment where no conflicting extrinsic evidence in aid of the interpretation was introduced in the trial court." ' [Citations.]" (*Ahern, supra,* 74 Cal.App.5th at p. 687.)

" 'Even when our review on appeal "is de novo, it is limited to issues which have been adequately raised and supported in [the appellant's opening] brief.  [Citations.] . . . ." ' [Citation.] . . . ' "[T]he most fundamental rule of appellate review is that an appealed judgment or order is presumed to be correct. [Citation.]  It is the appellant who bears the burden of overcoming that presumption.' [Citation.]" (*Golden Door Properties, LLC v. County of San Diego* (2020) 50 Cal.App.5th 467, 554–555.)  "Thus, ' " 'it is the appellant's responsibility to affirmatively demonstrate error' " ' by ' " 'supply[ing] the reviewing court with some cogent argument supported by legal analysis and citation to the record.' " [Citation.]' [Citations.]" (*Association for Los Angeles Deputy Sheriffs, supra,* 94 Cal.App.5th at p. 777.)

## DISCUSSION

Appellants argue, "The trial court erred in finding the arbitration clause [from the NDA] did not apply to [Abrams's] claims."  For the reasons set forth below, we conclude appellants have failed to establish the trial court erred in determining that Abrams's claims fall outside the scope of the NDA's arbitration

provision. Our resolution of this question moots appellants' claim the trial court erred in finding they waived their right to compel arbitration. (See *Mondragon v. Sunrun Inc.* (2024) 101 Cal.App.5th 592, 601 (*Mondragon*) [observing that " 'whether the parties' dispute falls within the scope of [an arbitration] agreement' " is "a 'threshold question[ ] presented by every motion or petition to compel arbitration' "].)

Before addressing appellants' challenge to the trial court's ruling, we describe certain relevant provisions of the NDA.

## A. The NDA's Purpose Is To Protect True Bullion's Confidential Information

The prefatory paragraph of the NDA provides that the contract is "entered into by and between [True Bullion] . . . and the undersigned ('Confidant'), as of the date signed below by [True Bullion], and on behalf of any and all affiliated companies, or approved agents and official representatives of the above parties." Abrams is the party identified as "Confidant" in the NDA. The NDA provides that it "remain[s] in full force and effect for a period of five years from the date signed and executed by all parties . . . ." The signature page indicates that Abrams and Anderson (on behalf of True Bullion) signed the NDA on October 4, 2019.[7]

As the trial court observed in its ruling, paragraph 1 of the NDA provides: " 'PURPOSE OF AGREEMENT [¶] The parties to this Agreement desire to engage in discussions regarding present

---

[7] Abrams asserts that appellants failed to authenticate properly the NDA. We assume solely for the purposes of this appeal that appellants authenticated the NDA and that Abrams signed it on October 4, 2019.

7

and/or potential future business relationships.  This Agreement combines a non-disclosure, a non-circumvention, and a non-competition agreement.  The parties intend to engage in substantive discussions and sharing of confidential information regarding certain new and useful business opportunities, trade secrets, business entity formation and structuring, and tax planning. [. . .]  Accordingly, the commitments of confidentiality in this Agreement are a condition to the Confidant's willingness to engage in the contemplated business discussions and planning.[8]  The Confidant agrees that it shall not use any advantages derivable from such information in its own business or affairs, unless the same is done pursuant to a new agreement with all other signatories to this document . . .' "  (With the exception of the fn., all alterations made by the trial court.)

Paragraph 2, which is titled "CONFIDENTIAL INFORMATION," provides:  "During and at all times following this Agreement, Confidant shall keep secret and retain in the strictest confidence all confidential matters and information relating to [True Bullion] and/or any of their respective customers, including, without limitation, trade secrets, proprietary information, 'know-how,' 'show-how,' customer identities, information or lists, [and] pricing policies . . . learned by it prior to and during its relationship with [True Bullion] ([']Confidential Information').  Confidant shall not disclose such Confidential Information to anyone other than authorized

---

[8] This sentence from paragraph 1 of the NDA appears to contain a typographical error, given that *True Bullion* would likely be reluctant to engage in contemplated business discussions and planning with Abrams unless she committed to safeguarding True Bullion's confidential information.

personnel of [True Bullion], or use such Confidential Information for its own benefit or for the benefit of any other person or entity other than [True Bullion] . . . ."  (Underscoring omitted from heading.)

Paragraph 3 contains a provision titled "NON-CIRCUMVENTION," which states:  "The Confidant hereby agrees for itself . . . that it will not, directly or indirectly, contact, deal with or otherwise become involved with any entity or any other entities or parties introduced, directly or indirectly, by or through the other party, its officers, directors, agents or associates, for the purpose of avoiding the payment to [True Bullion] of profits, fees or otherwise, without the specific written approval of [True Bullion]."  (Underscoring omitted from heading.)

Paragraph 4 provides:  "NON-COMPETITION  [¶]  The Confidant hereby agrees for itself . . . that the non-competition provision of this Agreement is an essential and material part of the total agreement, by which the Confidant agrees it shall not use any advantages derivable from such Confidential Information in its own business or affairs, unless the same is done pursuant to a new agreement executed by all signatories to this Agreement."  (Underscoring omitted from heading.)

Appellants argue that paragraph 5 obligates Abrams to arbitrate her claims against them.  Paragraph 5 provides in full:  "ARBITRATION OF GRIEVANCES  [¶]  The Parties agree that unless specifically provided to the contrary in this Agreement, any Grievance shall be resolved exclusively by binding Arbitration."  (Underscoring omitted from heading.)  The trial court correctly noted, "Nowhere is the term 'Grievance' specifically defined in the NDA."

9

**B. The Trial Court Found That Abrams's Employment-Related Claims Fall Outside the Scope of the Arbitration Clause**

The trial court determined the NDA "is limited to covering Abrams's non-disclosure, non-circumvention, and non-competition obligations to [True Bullion]." The court reasoned, "The stated purpose of the NDA is to facilitate 'discussions and sharing of confidential information regarding certain new and useful business opportunities, trade secrets, business entity formation and structuring, and tax planning.' [Citation.] Thus, read in context, the NDA's arbitration provision applies to 'any Grievance' arising from a matter covered by the NDA, e.g., a breach of Abrams's non-disclosure obligations." According to the trial court, "[T]he parties' agreement to arbitrate 'any Grievance' arising under the NDA cannot be reasonably understood as applying to all interactions between the parties, including those outside the parameters of the NDA."

In turn, the trial court found that Abrams's claims against appellants do not arise from a matter covered by the NDA. The court explained, "Abrams alleges that during her time working for [appellants], she encountered several Labor Code violations, including that [appellants] failed to allow Abrams to take her statutorily entitled rest period, that [appellants] made illegal deductions from Abrams's wages, and that [appellants] failed to furnish Abrams with accurate and complete wage statements." The court further noted, "Abrams alleges that she was also willfully misclassified [as an independent contractor,] and [that] . . . after she was terminated, [appellants] fraudulently presented her with a contract that purported to release [them] from all liability for their misconduct under the guise of an offer

10

of reemployment." Importantly, the court commented, "Nowhere does Abrams allege facts in the complaint relating to any party's breach of a non-disclosure agreement, nor is there any indication that the nature of Abrams's wage and hour dispute involves trade secrets or other confidential information in any way."

The trial court also found significant that "the NDA [does not] even reference the fact that Abrams had an ongoing employment relationship with [True Bullion] when the NDA was executed." The court explained, "Neither party disputes that Abrams became employed by [True Bullion] in May of 2019, approximately six (6) months before she signed the NDA on October [4], 2019.[9] It is unclear from either the NDA's express terms or [appellants'] argument how or why a non-disclosure agreement executed six (6) months after the start of Abrams's employment should bar her from proceeding with employment-related claims in Court."

The trial court summarized its ruling as follows: "Because Abrams's wage and hour and other claims do not arise under the NDA, the NDA's arbitration provision does not cover the causes of action alleged in Abrams's complaint."

## C. Appellants Fail To Demonstrate the Trial Court Erred In Finding that Paragraph 5 of the NDA Does Not Apply to Abrams's Claims

On appeal, appellants do not contest the trial court's finding that none of Abrams's claims relates to her obligations

---

**9** Although the trial court stated in its order that Abrams "signed the NDA on October *14*, 2019" (italics added), this appears to be a typographical error because her signature is dated "10/4/19."

under the NDA.  Rather, appellants argue that paragraph 5 of the NDA is a "broad arbitration provision" under which "the parties agreed that 'any Grievance[ ]' would be resolved 'exclusively by binding arbitration.' " Appellants maintain the text of this clause expresses the parties' intention to "arbitrate disputes regarding their relationship, which necessarily includes their alleged employment relationship." Applying the de novo standard to this legal question, we conclude appellants have not shown the trial court's construction of the NDA was erroneous.

As a preliminary matter, we agree with the trial court that context is of paramount importance in construing paragraph 5. " '[T]he *context* in which a [contract] term appears is critical. " '[L]anguage in a contract must be construed in the context of that instrument as a whole, and in the circumstances of th[e] case . . . .' " [Citations.] . . . While "reliance on [the] common understanding of language is bedrock[,] [¶] [e]qually important are the requirements of *reasonableness* and *context*." [Citation.]' [Citation.]" (See *Mount Vernon Fire Ins. Co. v. Busby* (2013) 219 Cal.App.4th 876, 882.)

Indeed, the Legislature has instructed courts to interpret broad contractual language in light of its context: "However broad may be the terms of a contract, it extends only to those things concerning which it appears that the parties intended to contract." (Civ. Code, § 1648.) Applying this principle in a prior arbitration case, we declared: "An arbitration agreement is tied to the underlying contract containing it, and applies 'only where a dispute has its real source in the contract. The object of an arbitration clause is to implement a contract, not to transcend it.' [Citation.] No authority permits sending a matter to arbitration simply because the same parties agreed to arbitrate a different

12

matter." (*Moritz v. Universal City Studios LLC* (2020) 54 Cal.App.5th 238, 246.)

Thus, however broad the undefined contractual phrase "any Grievance" may be in the abstract, we cannot divorce that language from the context in which it appears, to wit, a "NON-DISCLOSURE/NON-CIRCUMVENTION/NON-COMPETITION AGREEMENT." (Underscoring & boldface omitted.) (See *Rice v. Downs* (2016) 248 Cal.App.4th 175, 186 [" ' "A court must view the language in light of the instrument as a whole and not use a 'disjointed, single-paragraph, strict construction approach[.]' " ' "].)

The trial court correctly found that the NDA's stated purpose is the protection of True Bullion's confidential information, and that the NDA does not purport to regulate any other aspect of Abrams's relationship with appellants. Accordingly, the fact that paragraph 5 appears in the NDA, and not in some other agreement governing the parties' relationship, demonstrates the parties did not intend for any and all disputes between them to be submitted to binding arbitration.

Appellants contend, "Clearly the circumstances under which the NDA was made was [*sic*] in furtherance of [appellants'] business and alleged employment relationship with Abrams. The parties would not have entered into an NDA to keep matters confidential but for information revealed to Abrams by way of her business relationship or alleged employment with True Bullion." It is not apparent to us that this purported causal relationship between (a) Abrams's business or employment relationship with appellants and (b) the NDA has any bearing on whether, in executing the NDA, the parties intended to arbitrate all employment-related disputes.

13

Furthermore, as the trial court recognized, the lapse of time between the commencement of Abrams's tenure and the date of the NDA's execution further undermines appellants' position. The court observed there is no dispute that Abrams began working for True Bullion in May 2019, several months before she signed the NDA in October 2019.[10] We cannot assume that an arbitration clause in a confidentiality agreement executed months after the commencement of Abrams's tenure was intended to apply to all disputes related to her relationship with appellants.[11]

---

[10] The trial court observed that Abrams alleges in her complaint "she began working for [appellants] in May of 2019," and appellants do not claim that Abrams began working for Subculture, Anderson, and Viacrucis at some point in time *after* Abrams started her tenure at True Bullion.

Additionally, in their opening brief, appellants assert, without any supporting record citation, that Abrams's "business and alleged employment relationship with True Bullion . . . commenced on October 4, 2019, when [she] signed the NDA." We disregard that assertion. (See *Alki Partners, LP v. DB Fund Services, LLC* (2016) 4 Cal.App.5th 574, 590, fn. 8 ["[C]ourts will decline to consider any factual assertion unsupported by record citation at the point where it is asserted."].) We further note that appellants seem to abandon this position in their reply by claiming "the fact that [Abrams] signed the arbitration agreement after her purported employment began" "does not bring [her] claims outside of the scope or contemplation of the arbitration clause set forth in the NDA . . . ."

[11] Although appellants maintain True Bullion hired Abrams "as a Precious Metals Specialist independent contractor to sell [appellants'] products," they do not claim to have presented any such independent contractor agreement to the trial court.

14

Appellants further argue, "The NDA also made clear in paragraph 14 that the arbitration agreement is a 'material inducement[s] [*sic*] to GSIE's relationship with Confidant [Abrams] . . . .' "[12]  By inserting an ellipsis at the end of their quotation, appellants omit a key word from this portion of paragraph 14 of the NDA.  The full sentence reads:  "The parties to this Agreement acknowledge and agree that the restrictions contained in Paragraphs 2, 3, 4, and 5 are material inducements to GSIE's relationship with Confidant *hereunder*."  (Italics added.)  The text of paragraph 14 thus belies appellants' argument that paragraph 5 of the NDA applies to any and all disputes regarding their relationship with Abrams.

In sum, appellants fail to show the trial court erred in concluding that, "read in context, the NDA's arbitration provision applies to 'any Grievance' arising from a matter covered by the NDA," and that the clause does not encompass Abrams's employment-related claims in this case.  Accordingly, we affirm the trial court's order denying the motion to compel arbitration.  (See *Mondragon*, *supra*, 101 Cal.App.5th at p. 602 [" '[A] trial court has no power to order parties to arbitrate a dispute that they did not agree to arbitrate.' "].)

_____

Furthermore, our record does not contain a copy of an independent contractor or employment agreement.

[12]  (With the exception of the "[*sic*]," all alterations made by appellants.)  As used in the NDA, "GSIE" is a reference to True Bullion.

15

## DISPOSITION

We affirm the trial court's December 20, 2023 order denying appellants' motion to compel arbitration. Respondent Cynthia Abrams is awarded her costs on appeal.

NOT TO BE PUBLISHED.


BENDIX, J.


We concur:



ROTHSCHILD, P. J.



M. KIM, J.

16